THE PENNSYLVANIA AND POUGHKEEPSIE RAILROAD
COMPANY v. JAMES ROOT ET AL.

53 253
54 577
53 253
57 195
53 253
70 290
70 427

1. In condemnation proceedings, where the damages done to a farm by the location of a railroad arises entirely from its changed agricultural conditions, a farmer is an expert with respect to the value of the lands before the laying of the road, as compared with their value after that transaction.
2. But when, beyond this, the value of the lands has been affected injuriously in other ways, as from its exposure to be fired by passing locomotives, &c., a farmer cannot make such a comparison of values as an expert.

On Error to the Sussex Circuit.

Argued at November Term, 1890, before BEASLEY, CHIEF JUSTICE, and Justices DIXON and MAGIE.

For the plaintiff in error, *Martin & Conklin.*

For the defendants, *L. Van Blarcom* and *Francis J. Swayze.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This was a proceeding to condemn lands for railroad purposes. The property so sought to be taken was part of a farm.

The first question presented for the consideration of this court is, whether, in such an injury before a jury, on appeal to the Circuit Court, it is lawful to ask a witness, who is a farmer acquainted with the value of farm land in the neighborhood of the property condemned, what, in his opinion, is the market value of the farm in question before the running of the railroad through it, and what is its value after such event?

It seems to me that this question, in its broad sense, cannot be answered, categorically, either in the affirmative or the negative, for the legality of the interrogation depends on the incidents of the case that is trying.

The witness is an expert on certain subjects, and his opinions have no place in the judicial investigation except by reason of such *status.* Within the sphere of his special knowledge he is competent to express his opinion; beyond that reach he is not competent. Such is, beyond question, the general rule; none but experts on the given subject can, in any course of law, express their estimate of the value of any thing real or personal. Such, it is believed, is the universal practice of all courts that are controlled by the methods of the common law.

Carrying, therefore, in our mind this doctrine that the witness in question is competent to express his opinion only upon subjects to which his special knowledge relates, it is easy to see that in the class of cases to which the present one belongs, sometimes the interrogatory above stated will be legitimate, and at other times not so. Thus, if the effect of the location of the railroad in a particular case is simply to sever the fields of a farm from each other, producing the necessity of putting and keeping up additional fences, and producing inconvenience in the tillage of the farm—if these be the sole detriments in question, it would seem plain that the farmer would be an expert as to the *quantum* of such impairment. The situation would be the same as that which is occasioned by the laying out of a common highway under similar circumstances, and the effect on the value of the property by the railroad or by the highway would be identical. As such intersections of land are of common occurrence, and the expense and inconveniences proceeding from them are well known practically to every agriculturalist, and are equally unknown to persons of other callings, it necessarily follows that the former must be regarded in courts of law as possessed of the knowledge of the specialist on the subject. In such a posture of affairs, the opinion of the farmer touching the value of the given farm before such intersection of it, as compared with its value subsequently, is manifestly admissible, as the difference between such values is the exact measure of the damage that has been done.

But in cases of the intersection of farms, or other lands, by railroads, the problem with respect to the damage thereby inflicted is oftentimes one of greater complexity than that which is presented in the class of instances just referred to. By such transactions property of this kind is frequently damnified beyond that which ensues from a change merely in its agricultural conditions. For example, let the road run within a few yards of the dwelling house upon the farm; clearly, such building may be subjected to some risks of being fired by sparks from locomotives, and its inmates disturbed, by night and by day, by the noise, dust and smoke occasioned by the frequent trains. And it would seem evident that with regard to the damage thus inflicted, no person can claim to be an expert. On this subject all men stand on an equal footing, for each case that arises must necessarily be differently conditioned. It is presumed that no court would permit a witness, because he is a farmer, to be directly asked how much, in his opinion, the value of the farm had been lessened by reason of its dwelling house being subject to the noises and smoke of passing locomotives, and yet it would seem undeniable that such an opinion in the case just stated would be embraced in a general statement of the witness, as to the decreased market value of the property after the laying of the road, for, if we suppose the mischief stated to be represented by the sum of $1,000, the selling value of the premises would obviously be diminished in about that measure.

The result, therefore, is, that a farmer is to be deemed competent, in this class of cases, to express his opinion as an expert with respect to the value of the lands, both before and after the laying of the railroad, whenever the damage that has been done has arisen solely from a change in the agricultural conditions of the property, and that he is not so qualified when there are other causes of damage of the indefinite nature of these just specified.

In the present instance there was no testimony relating to the damages, except those supposed to have been occasioned by the mere intersection of the farm by the railroad, and conse-

quently the opinion of the witness as an expert with respect to them was admissible.

There was no error in this particular; the evidence was properly received by the trial judge.

The other objections pressed in the briefs of counsel have been examined, but in these respects neither error nor matter requiring discussion have been found.

Let the judgment be affirmed.