PENNSYLVANIA, NEW JERSEY AND NEW YORK RAIL-
ROAD COMPANY, PLAINTIFF IN ERROR, v. MARIE
SCHWARZ ET AL., DEFENDANTS IN ERROR.

Submitted December 10, 1907—Decided June 15, 1908.

1. In condemnation proceedings, where the prospective depreciation
   of a tract of land arises entirely from the construction and opera-
   tion of a railroad tunnel two hundred feet below the surface of
   the soil, a real estate agent familiar with the prices of property
   in the neighborhood, and who in another locality became ac-
   quainted with the effects upon property values of a railroad
   tunnel eighty or ninety feet below the surface, with shafts through
   which the smoke and gas escaped, is not an expert with respect to
   the question, What will be the value of the given tract after the
   construction of the tunnel as compared with its present value?
2. The experience of such witness that purchasers of real estate
   have a prejudice against deeds that except easements does not
   qualify him to give an expert opinion upon the foregoing question
   of land values.

On error to the Hudson Circuit.

For the plaintiff in error, *James B. Vredenburgh.*

For the defendants in error, *John J. Fallon.*

The opinion of the court was delivered by

GARRISON, J. This writ of error brings up a judgment
rendered upon the verdict of the jury on an appeal to the
Circuit Court in a proceeding to condemn an easement for a
tunnel for railroad purposes. *Pamph. L.* 1903, *p.* 657, § 23.

The defendant in error is the owner of a tract of land
through which the tunnel in question passes at an average
depth of two hundred feet below the surface of the soil. The
tract is occupied by three frame dwellings and a stable. At
the trial a witness called by the landowner testified over ob-
jection that he considered that the effect of the tunnel would
be to depreciate the value of the tract "anywhere from thirty
to fifty per cent." When asked by counsel, who had called

him to the stand, "What actuates you in placing that percentage upon the depreciation?" the witness answered: "Because Mrs. Schwarz, or any other individual who will own property affected as this property will be, to sell that property, cannot give a full covenant warranty deed without placing that exception and saying that the exception is that there is a railroad that has a right under this property practically its entire length." When asked: "If some forty-two feet were taken from underneath the Schwarz property, at a point one hundred and eighty-two feet or thereabouts below the surface of the street, what, in your opinion, would be the amount of the depreciation in value of that property caused by that taking away?" The answer was: "Anywhere from thirty to forty-five, or fifty per cent.; I couldn't say—I never had a similar case, but I say that the prejudice—I claim that the damage done is the prejudice a man would have against purchasing a piece of property that would have some covenant or would convey an easement into it, giving a certain right of way." To the question, "Have you, in the course of your real estate business, ascertained that tenants have a prejudice against living in properties over tunnels?" the answer of the witness was, "I never had any experience of that kind." To the following questions then put by the court the following answers were given:

"Q. Your idea as to depreciation in value is due to what you consider to be a fact, that if a deed is offered to a purchaser and it has an easement, the purchaser would not be as willing to buy it, and that depreciation is from thirty to fifty per cent. in the case of a tunnel?

"A. I think that would certainly be the damage.

"Q. And that is irrespective of any question whether there is any shaft or not?

"A. Yes, sir.

"Q. It is the mere existence of the easement?

"A. I claim that is my argument."

There can be no doubt, therefore, either as to the basis upon which the witness testified or that his testimony was prejudicial to the plaintiff in error.

Assignments based upon exceptions allowed at the trial challenge the ruling of the trial court that accorded to this witness the *status* of an expert with respect to the special question of value upon which the jury was to pass, viz., what will be the value of the tract after the construction of the tunnel as compared with its present value? The legal question upon error is whether there was any testimony before the trial court that the witness possessed such special knowledge touching the particular matter of inquiry that entitled him to express an expert opinion upon the subject.

The witness was a real estate agent, but that did not qualify him as an expert with respect to the peculiar question of value that arose upon the facts of the present case. *Pennsylvania Railroad* v. *Root, 24 Vroom 253.*

Indeed, neither the court below nor counsel for the landowner rested the qualification of the witness upon the nature of his vocation; on the contrary, the effort was to show his possession of a special knowledge of the subject that entitled him to give an expert opinion upon the matter the jury was to pass upon. The proofs upon this preliminary question brought out by the counsel who called the witness were that witness had been for six years clerk of the Town of Union through which the West Shore tunnel was constructed, and that for a part of that time he was engaged in the real estate business in the course of which he became acquainted with certain facts touching the development of real estate along the line of that tunnel and with property values thereby affected. Upon cross-examination it was brought out that the West Shore tunnel was only eighty or ninety feet below the surface, that it carried two tracks on which a steam railroad operated both freight and passenger trains, and that the tunnel was constructed with open shafts through which the smoke and gas escaped. This latter circumstance, as well as the great disparity in depth between the two tunnels, were claimed by counsel for the condemning party to so differentiate the West Shore tunnel from the one under consideration in substantial respects as to afford no basis for the expert qualification of the witness touching the pending inquiry.

Beyond this single instance the witness admitted that he had neither knowledge nor basis of knowledge. Upon the conclusion of the preliminary examination the witness was told by the court that he might answer the following question:

"*Q.* (By Mr. Fallon.) From your knowledge of what happened in the Town of Union, as regards the effect on realty values after the building of the West Shore tunnel, what, in your opinion, would be the effect as against the values of the Schwarz property by reason of the construction of that tunnel?"

Instead, however, of answering this question, the witness addressed the following questions to the court and received the following answers:

"The Witness—There is one question that I am not positive on that I would like to ask the court, if he would enlighten me: If an award is made, such as in a railroad of this kind, the owner, of course, can only sell it subject to this award, or whatever is given?

"The Court—Subject to the tunnel right.

"The Witness—That easement?

"The Court—That is right.

"The Witness—You could not give a full covenant warranty, free and clear of all encumbrance, without making an exception, could you?

"The Court—The right of the railroad to build a tunnel would have to be excepted."

Thereupon the witness gave as his answer to the question that had been propounded to him the estimate that the depreciation in value would be "anywhere from thirty to fifty per cent.," adding the explanations as to the basis of this estimate that are quoted in the earlier part of this opinion, viz., the prejudice against such conveyances.

From this rehearsal of the examination of the witness that preceded his answer to the question calling for his expert opinion, it is clear not only that he gave no testimony that showed the possession by him of any special knowledge that qualified him to speak as an expert upon the particular subject of inquiry, but also that by his questions to the court he

made it evident that he was about to base his answer in part, at least, upon an irresponsive if not an improper consideration, viz., a popular prejudice that he believed·existed against conveyances of a certain character.

Inasmuch as the witness exhibited no right to the *status* of an expert other than his single observation with respect to a substantially different tunnel, and his belief as to the existence of a prejudice against conveyances that excepted easements there was no testimony before the trial court that qualified the witness as an expert upon the special question at issue. The discussion of Chief Justice Beasley in Pennsylvania Railroad *v.* Root, already cited, and that of Mr. Justice Dixon, in *Laing* v. *United New Jersey Railroad and Canal Co., 25 Vroom 576,* make it clear that the witness, under these circumstances, was not entitled to speak with expert authority. In view of the preliminary examination of the witness we think that the trial court erred in its refusal to sustain the objections that were persistently and pertinently presented by the plaintiff in error, and that the testimony that came in by reason of such refusal was of so prejudicial and injurious a character as to require the reversal of the judgment rendered upon the resulting verdict.

The judgment of the Hudson Circuit is reversed in order that there may be a *venire de novo.*

*For affirmance*—THE CHANCELLOR, BOGERT, J. 2.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, BERGEN, VROOM, GREEN, GRAY, DILL, J.J. 10.