[Civ. No. 19068.   First Dist., Div. One.   Dec. 2, 1960.]

SOUTH SAN FRANCISCO UNIFIED SCHOOL DISTRICT, Respondent, v. ANTONIO SCOPESI et al., Appellants.

Field, DeGoff & Rieman and Sidney F. DeGoff for Appellants.

Keith C. Sorenson, District Attorney and Lyle R. Edson, Chief Civil Deputy District Attorney, for Respondent.

COAKLEY, J. pro tem.*—This is an appeal from a judgment, entered upon a jury verdict in an eminent domain action, awarding appellants the sum of $116,350 for 13.2 acres of their land. The sole issue at the trial was the determination of the fair market value of the subject property.

The alleged error on which the appeal is based was the admission in evidence, over the appellants' objection, of testimony by one of the school district's experts as to the *value* which he had placed on neighboring property which had been the subject of earlier condemnation proceedings instituted by the respondent herein.

The error complained of arose in this way. Rochex, an expert witness for the district, had testified extensively as to his opinion that the highest and best use of the subject property was its present use, viz., for horticultural purposes. He stated his reasons therefor. He was then asked on direct examination concerning comparable sales in the area. He answered that there had been only one sale of comparable horticultural property in the area and identified the property as the near-by McLellan property. He was asked to give the details of that sale. At that point, counsel for the appellants

---

*Assigned by Chairman of Judicial Council.

objected on two grounds. They were: (1) that because the McLellan sale was made under threat of condemnation it was not a voluntary sale and therefore could not be considered a comparable sale; and (2) that a gross price was paid for the land and substantial improvements without any allocation or segregation of the price paid for the land as distinguished from the improvements, and that therefore Rochex' testimony would represent only his opinion as to the *value* rather than the *sale* price of the land. In support of the second objection, appellants' contended that although an expert witness may testify as to the price for which comparable property was sold (Code Civ. Proc., § 1845.5; *County of Los Angeles* v. *Faus* (1957), 48 Cal.2d 672 [312 P.2d 680]) his opinion as to the *value* of such property in the absence of a sale, or as to the *value* of the land, alone, where sold together with improvements for a gross or unsegregated price, is not admissible, citing *Sacramento etc. Drainage Dist.* v. *Jarvis* (1959), 51 Cal.2d 799 [336 P.2d 530]; *People* v. *Murray* (1959), 172 Cal.App.2d 219 [342 P.2d 485], and cases from other jurisdictions. The objection was overruled and the witness was permitted to testify that at the request of the instant school district he had made the initial appraisal as to the *value* of the McLellan land separate and apart from the value of the improvements. He had *valued* the McLellan *land* at $6,250 per acre.

Questioned on *voir dire* as to whether the McLellan sale was a forced sale under threat of condemnation and not a true market value sale, the witness testified that he was a friend of McLellan from school days, that at lunch and on other occasions, both before and after the McLellan sale, he had discussed the sale with McLellan; that in their discussions the price paid for the land had not been segregated from the gross price but that McLellan was satisfied with the gross price.

We find it unnecessary to pass on the merits of either of the appellants' assignments of error because we are satisfied from an examination of the entire record that if error was committed in either of the two particulars urged it was not prejudicial. Such being the case this court may not set the judgment aside. (Cal. Const., art. VI, § 4½.)

Our conclusion is predicated upon the following summary of the evidence: Antonio Scopesi and Carlotta Scopesi, the property owners and appellants, sought to establish that the highest and best use of the subject property was for industrial purposes. They presented two expert witnesses, each of whom so testified. However, each qualified this aspect of his testi-

mony by stating that the Scopesi property was suitable for industrial use *only* if considered in conjunction and as a unit with adjoining property owned by Amalia Reichardt. Otto Reichardt, son of Amalia Reichardt, testified as to a discussion with Scopesi eight years earlier in which they concluded that ''our two properties separately did not command the value of the two as a unit, and we therefore agreed that neither party would sell or negotiate without contacting the other.'' The subject had been discussed several times in the interim and the understanding had continued to the time of Reichardt's testimony. It had never been reduced to writing. It was a ''gentleman's contract, verbal contract.'' Otto Reichardt, with whom the appellants had the understanding, was not the owner of the property but was managing and operating it as a duck farm. On cross-examination Reichardt acknowledged that approximately a month earlier, in another department of the same court, in an eminent domain proceeding involving the Reichardt property, he had testified that the highest and best use of the Reichardt property was as a duck farm. There was an attempt to explain that answer but a colloquy between counsel and court leaves the record without the explanation. The testimony also discloses that before the two properties could be used for industrial purposes other obstacles had to be overcome. These included obtaining a use permit from the city of South San Francisco, and possible installation of a spur track which could not be done without substantial construction costs and obtaining a right of way across the property of a third party.

Scopesi's experts testified to several comparable sales for industrial use at prices ranging from $20,000 to $40,000 per acre. They each fixed the value of the Scopesi property, if sold together with the Reichardt property, at $20,000 per acre or $264,300.

The admissibility of the testimony of the Scopesi experts as to the use of the Scopesi property *if* joined with the Reichardt property was argued vigorously and extensively in the presence of the jury. Counsel for the district took the position that such testimony was ''hypothetical, conjectural and remote'' and should be stricken. Counsel for the appellants insisted that whether or not it was hypothetical, such possible use should be considered by the jury. The testimony was admitted and motions to strike denied.

The court instructed the jury that in determining the highest and best use of the property, and in determining its

fair market value for such use, it could consider a joinder of the Scopesi and Reichardt properties "if the joinder were reasonably practicable." Since the appellants based their case solely on the use of their property for industrial purposes, and since the court instructed that such possible use could be considered by the jury, it may be assumed that counsel for the appellants covered the matter in his argument to the jury. It is not open to doubt, therefore, that the question of industrial use was before the jury and presumably was considered by it. Nor is it open to doubt that the jury rejected the appellants' theory.

In contrast to the appellants' experts, the district's experts Rochex and Clark fixed $106,000 and $107,000, respectively, as the market value of the subject property. As stated earlier this was for use as horticultural property, that being its highest and best use in their opinion. Neither of them expressed a per acre value for the Scopesi land, as such. Their appraisals were on the value of the property to be taken, including the improvements which they felt had value in connection with the use of the property for horticultural purposes. Rochex, however, testified that sales for agricultural property in the county ran as low as $3,000 to $3,500 an acre, and that ". . . I found that within the area as far as horticultural properties are concerned, that the maximum any horticulturist will pay for properties [is] around $6000 an acre." Also, as noted above, he testified that he had valued the McLellan land for horticultural purposes at $6,250 per acre. By mathematical computation, and taking the higher of these per acre figures, the Scopesi land, exclusive of improvements, would therefore bring approximately $81,000. Presumably the difference between this figure and $107,000, a difference of over $25,000, was allocated by the district's appraisers to the improvements consisting of wells and water system, a house of nominal value, a barn suitable for a horticultural operation, and miscellaneous small buildings of little value. In returning a verdict for $116,350, or approximately $10,000 more than the appraisals of the district's experts for land and improvements, and in excess of $35,000 over Rochex' valuation for bare horticultural land, the jury appears to have rejected the district's theory that the highest and best use was for horticultural purposes. If this be so then the admission of Rochex' testimony as to the *value* of the McLellan *land* for horticultural purposes could not have been prejudicial.

By what process then did the jury arrive at its verdict of

$116,350? The answer is found in the following summary of other testimony:

(1) On cross-examination each of the appellants' experts testified that if the Scopesi property was considered alone and not as a unit with the Reichardt property, its highest and best use was residential. Each said, however, that he had not appraised it on that basis. Pressed for an answer as to its value for residential purposes, one of the appellants' experts fixed $8,000 per acre. This would result in a market value of approximately $105,600 for the 13.2 acres.

(2) The Scopesi property was located within the boundaries of the city of South San Francisco. There was testimony that the city had under consideration the adoption of a master zoning plan, and that the recommendation being considered thereunder for the Scopesi property was R-1, i.e., residential zoning.

In view of the evidence as to the three possible uses of the property, viz., horticultural, residential and industrial; and particularly in view of the highly speculative character of the evidence on which to base an industrial use finding, it was both proper and logical for the jury to take a middle ground, viz., residential use. The evidence was sufficient to sustain such implied finding. That the jury awarded Scopesi approximately $11,000 more than his expert fixed as the bare land value for residential use was not unusual. It could be attributed to the jury's generosity or as intended to cover the value of the improvements on which the appellants' experts placed little or no value for industrial use, but to which the district's experts ascribed more than nominal value for horticultural use.

If, on the other hand, and as appellants' urge as grounds for reversal, the jury accepted the district's theory of horticultural use as the highest and best use, and was influenced by the testimony as to the McLellan land value of $6,250, the error, if any, in admitting such testimony still was not prejudicial for these reasons:

(a) It is abundantly clear that the appellants' theory of industrial use at $20,000 an acre or $264,300 for the subject property was rejected by the jury.

(b) There is no question as to the materiality and competency of (1) the testimony of the district's experts that the highest and best use of the property was for horticultural purposes, and (2) their estimates of $106,000 and $107,000, respectively, as the value for such purposes. ▮ In other

words, an expert may express his opinion as to the highest and best use of a subject property, and as to its fair market value for such use, without also testifying to prices paid in comparable sales. Indeed, it was not until 1957, in *County of Los Angeles* v. *Faus, supra*, that the Supreme Court approved the admission on direct examination of prices paid in sales of comparable property. Until then an expert was permitted to express his opinion as to the value of the subject property and to give his reasons on both direct and cross-examination (*People* v. *LaMacchia* (1953), 41 Cal.2d 738 [264 P.2d 15], and see cases cited in *Faus, supra*) but he was not permitted to testify on direct examination to prices paid in other sales. "The long established rule in this state is that witnesses 'cannot, upon the direct examination, be allowed to testify as to . . . sales of adjoining lands . . .' " (*People* v. *LaMacchia, supra*, at p. 744).

It often happens, as in this case, that the experts know of few, if any, comparable sales in the area for such purposes. That circumstance, however, when called to the attention of the trier of fact goes to the weight to be accorded the experts' opinion rather than its admissibility. ▮ As stated in *LaMacchia, supra*, "It is clear that one who has given his opinion as to the value of certain property may, upon direct examination, state the reasons upon which it rests. (*Long Beach City H.S. Dist.* v. *Stewart*, 30 Cal.2d 763, 773 [185 P.2d 585, 173 A.L.R. 249].) But the facts stated as reasons do not become evidence in the sense that they have independent probative value upon the issue as to market value. [Citations.] Instead, they serve only to reinforce the judgment of the witness, that is, they go to the weight to be accorded his opinion. (P. 745.)

▮ " 'All that is necessary to be shown to entitle a witness to give an opinion is to show "that he has some peculiar means of forming an intelligent and correct judgment as to the value of the property in question . . . beyond what is presumed to be possessed by men generally." ' (*Spring Valley Water Works* v. *Drinkhouse*, 92 Cal. 528, 534 [28 P. 681].) ▮ The usual expert is qualified by proof of his familiarity with the property and with other property in the neighborhood, his experience in the business, his familiarity with the state of the market and of sales of similar property in the vicinity." (*People* v. *LaMacchia, supra*, at p. 746.) ▮ Thus, the opinions of the district's experts as to use

and value were clearly admissible without reference to any specific sales for horticultural use. At most the testimony as to the McLellan property was surplusage unless prejudicial. It could not have been prejudicial in view of the jury's clear rejection of the appellants' theory of industrial use, and by its award of an amount substantially in excess of the value of the property for residential purposes, that being its next highest use in the opinion of the appellants' experts.

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.