66 N.J. Super. 171 (1961)
168 A.2d 817
ROCKLAND ELECTRIC COMPANY, A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
BOLO CORPORATION, A NEW JERSEY CORPORATION, FRANK BOGGIANO, SYLVIA BOGGIANO AND THE BOROUGH OF MONTVALE, A MUNICIPAL CORPORATION, IN THE COUNTY OF BERGEN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 3, 1961.
Decided March 16, 1961.
*173 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Walter W. Weber, Jr. argued the cause for appellant (Messrs. Weber, Muth and Weber, attorneys).
Mr. Ralph W. Chandless argued the cause for respondent Bolo Corporation (Messrs. Chandless, Weller and Kramer, attorneys).
The opinion of the court was delivered by CONFORD, S.J.A.D.
This is a condemnation proceeding. The plaintiff, a privately owned public utility, acting pursuant to statute, condemned an easement across the defendant corporation's 42-acre tract of unimproved land in the Borough of Montvale, Bergen County, for purposes of erecting and maintaining a high-tension electric transmission line on poles. The easement was for a 100-foot width, on 50 feet of which there was already an underground easement of the Tennessee Gas Transmission Company with gas piping installed therein.
The single expert witness for the defendant-owner of the property, William J. Schwenn, testified at the jury trial in the Law Division that the damage to the premises as the result of the taking was $26,100. The plaintiff produced two witnesses, one testifying that the value of the land taken was $3,800, and the other giving a valuation of $3,240. Both of these witnesses said that there was no severance damage to the remainder of the tract. Schwenn's estimate included an element for such severance damage. The jury returned a verdict of $16,467, on which judgment was entered.
On this appeal the plaintiff does not challenge the jury verdict, but only the ruling of the trial court sustaining the qualifications of Schwenn as an expert witness and the exclusion of certain questions addressed to the plaintiff's witness Slothus on redirect examination.
*174 At the trial, defendant offered Schwenn as an expert witness on land values, and upon challenge of the witness by plaintiff, examined him on his qualifications before eliciting any testimony concerning value or damages. The witness stated he had been a real estate appraiser for 30 years, had appraised thousands of pieces of property for the government and private parties, and that his work had included other appraisals in the immediate area as well as the appraisal of the entire right of way of the Tennessee Gas Transmission line across the State, including the 50-foot easement taken by that company within the very subject property. He indicated familiarity with the physical characteristics, location and zoning of the property here involved.
When the witness was asked a direct question as to his valuation of the subject property as of September 1959, plaintiff objected that the witness had not been qualified "because he has not given any testimony as to comparable properties or shown he has any knowledge of the value of properties in the neighborhood of this property." To meet the objection defendant questioned the witness concerning "comparable values" in the area (both counsel were obviously referring to sales of comparable properties). Before the witness could answer, plaintiff again objected "unless he testifies to them of his own knowledge," "not from hearsay." The court overruled the objection, and the witness cited sales of three other properties in the general area. On cross-examination, limited to qualifications, Schwenn indicated his knowledge of one of the sales came from the purchaser, of another from an attorney in the transaction, and of the third "from the records." Upon renewal of objection to the witness's qualifications on the ground that he did not have first-hand knowledge of the sales of the properties sold and that they were not "comparable," the court overruled the objection and permitted the witness to testify.
The sole basis for the attack upon the trial court's ruling qualifying the witness is the asserted adverse holding in Essex County Park Comm. v. Brokaw, 107 N.J.L. 110 *175 (E. & A. 1930), wherein four judges of the court dissented. In that case the court sustained the action of a trial judge in refusing to qualify a valuation witness whose only knowledge of value, so far as appears from the opinion, was sales information gleaned from others or from public records, rather than direct personal knowledge of such sales. The court said (at p. 112): "* * * the qualifying knowledge of comparable sales must be such as would be competent evidence if testified to by the proposed witness or, if not, must be substantiated by competent evidence of others before it can have the effect of qualifying the witness to speak as an expert." No authority for that proposition was cited by the court. Before considering the effect on that ruling of the 1931 statute (L. 1931, c. 229), now found in N.J.S. 2A:83-1, or its intrinsic merit as a precedent, we observe that the case is not controlling here since considerably more was shown to qualify this witness than knowledge of sales of other property.
The witness had made "thousands" of appraisals professionally and had testified as an expert frequently (other appeals decided by this court include cases where this witness testified as a realty expert concerning Bergen County property in both tax and condemnation litigation; see, e.g., Jat Company, Inc. v. Division of Tax Appeals, 47 N.J. Super. 571, 577, 579 (App. Div. 1957), certification denied 27 N.J. 278 (1958); Village of Ridgewood v. Sreel Investment Corp., 28 N.J. 121, 126 (1958); and the filed record of Tennessee Gas Transmission Co. v. Maze, 45 N.J. Super. 496 (App. Div. 1957)). His experience included appraisal of and testimony in court concerning a gas transmission easement across the very property here in question. From these facts alone the trial court in its sound discretion could have concluded that the witness was well qualified to have, and had, in fact, conducted all such studies of pertinent and relevant data as are customarily made by valuation experts, in arriving at his opinion of the value of the property involved in this case. He was thus affirmatively shown to have been possessed *176 of expert qualifications not manifest in the Brokaw opinion concerning the witness who was there held unqualified.
In this State, as generally, a witness may qualify as an expert by reason of study without practice or practice without study. 2 Wigmore on Evidence (3d ed. 1940), § 555 et seq.; 3 Id., § 712 et seq.; Wheeler & Wilson Mfg. Co. v. Buckhout, 60 N.J.L. 102, 105 (Sup. Ct. 1897); State v. Arthur, 70 N.J.L. 425, 427 (Sup. Ct. 1904); Fenias v. Reichenstein, 124 N.J.L. 196, 200 (Sup. Ct. 1940); cf. Sanzari v. Rosenfeld, 34 N.J. 128 (1961). Other jurisdictions hold that a witness may qualify as an expert by reason of training, experience or both, Carroll v. Magnolia Petroleum Company, 223 F.2d 657, 664 (5 Cir. 1955); or if he has the requisite knowledge, skill or training, Bratt v. Western Air Lines, 155 F.2d 850, 853, 166 A.L.R. 1061 (10 Cir. 1946), certiorari denied 329 U.S. 735, 67 S.Ct. 100, 91 L.Ed. 635 (1946); or if, because of special study or experience he possesses special skill or knowledge not common to the average man, Wilmington Housing Authority v. Harris, 8 Terry 469, 47 Del. 469, 93 A.2d 518, 522 (Super. Ct. 1952); Tifton Brick & Block Co. v. Meadow, 92 Ga. App. 328, 88 S.E.2d 569, 573 (Ct. App. 1955). Expertness may be acquired by occupational experience as well as by scientific study, Rogers on Expert Testimony (3d ed. 1941), § 40, p. 69; Churbuck v. Union Railroad Co., 380 Pa. 181, 110 A.2d 210, 213 (Sup. Ct. 1955); United States v. 3969.59 Acres of Land, 56 F. Supp. 831, 838 (D.C.D. Idaho 1944).
It is elementary that, within broad limits, the qualifications of an expert witness are for the discretionary determination of the trial court; an appellate court will not reverse if there is "any legal evidence" to support the trial court's action. Brown v. New Jersey Short Line R.R. Co., 76 N.J.L. 795, 796 (E. & A. 1908) (emphasis by the court). There was clearly no mistaken discretion in the qualification of Schwenn as an expert by the trial court, notwithstanding the Brokaw case, supra. Cf. State, by State Highway Commissioner *177 v. Williams, 65 N.J. Super. 518 (App. Div. 1961). The witness showed exceptionally extensive study and experience in the field of land valuation, including the area surrounding the property in question. It is of note, incidentally, that plaintiff, while attacking the qualifications of Schwenn for use of alleged hearsay in his sales data, itself relied upon the testimony of a realty expert who supported his valuations by sales information supplied by others, and thus also without his "personal" knowledge.
Some comment concerning the applicability of N.J.S. 2A:83-1, supra, is required. This statute, enacted not long after the decision of the Brokaw case, and undoubtedly because of it, provides in substance that any witness in a tax assessment or condemnation case shall be competent to testify as to sales of comparable property on the basis of information obtained from the owner, seller, purchaser, lessee or occupant, or from brokers who negotiated or who are familiar with or cognizant of such sales. However, it contains a proviso that it "shall not be construed to apply to any action or proceeding instituted by any individual or private corporation authorized to take property for public use where compensation must first be made to the owner therof." Defendant invokes this statute as an additional sanction for the use of information of sales received from participants therein by the witness Schwenn, and urges that the proviso, if construed as applicable to a condemnation proceeding by such a corporation as this plaintiff, may be read out of the statute as unconstitutionally discriminatory, special and unreasonable. However, the question of constitutionality was not raised below or in defendant's "Statement of Questions Involved," and we deem it unnecessary to pass upon it, as we have found the qualification of the witness not to have been reversible error, apart from the effect of the statute.
It is to be observed, moreover, that the cited statute does not purport to deal directly with the qualification of an expert witness, the only question involved in this phase *178 of the present case, but rather with the substantive competency of sales offered as direct evidence of value when proven in the manner specified by the testimony of any witness. See White v. State Board of Tax Appeals, 123 N.J.L. 350 (Sup. Ct. 1939). Undoubtedly, however, where applicable, the statute eliminates the bar of the Brokaw rule against the qualification of an expert on the basis of the so-called "hearsay" nature of the sales information used by him.
From the foregoing, it is to be noted that the Brokaw rule, prohibiting the use of sales of other properties to qualify an expert unless he participated in the sales or unless direct proof of such sales by participants is adduced, is, by virtue of the statute, a dead letter in New Jersey except in an eminent domain proceeding brought by a privately owned utility. While the decision does not control the present case, for reasons indicated above, it may be well to point out that its philosophy is out of harmony with the generally followed rules on the subject.
Since the customary method by which appraisers of real estate obtain their information of sales of comparable property is from sources they deem reliable, the relevant transactions usually including some in which the appraiser has not participated personally, the generally followed rule "permits an expert witness as to value to base his opinion on those sources of information to which business men usually resort, and allows the witness to divulge to the court the data on which his opinion is based, even though hearsay testimony is thus presented." Delaware, L. & W.R.R. Co. v. City of Hoboken, 16 N.J. Super. 543, 556, 557 (App. Div. 1951), reversed on other grounds, 10 N.J. 418 (1952); see the quotation from Whitney v. Thacher, 117 Mass. 523, 527 (Sup. Jud. Ct. 1875), set forth in 3 Wigmore on Evidence (3d ed. 1940), § 719, p. 54; Annotation, 159 A.L.R. 7, 43 (1945); Tennessee Gas Transmission Co. v. Maze, supra (45 N.J. Super., at p. 504). In the true sense, of course, such information is not "hearsay," *179 since on the question of qualification of the witness there is no issue for the fact-finder on the truth or falsity of the facts of the sale cited, but rather a discretionary determination for the court as to whether the expert's knowledge of the sale has been obtained by him by the means customarily used by such appraisers in actual practice. See Delaware, L. & W.R.R. Co. v. City of Hoboken, supra (16 N.J. Super., at p. 557).
Plaintiff argues that some of the sales relied upon by the witness Schwenn were of residential property, whereas most of the subject property was zoned for limited commercial uses. But such objections go not to competency, but rather to the probative weight of the proofs. The differences in zoning represent a matter for the witness's expert judgment in evaluating the sales information before applying it to the subject property. There is no contention here that the witness did not in his own mind allow whatever weight he thought warranted to the difference in zones before using the sales. The assumption is that he did. If it could have been shown that he did not, this would go to the weight of his testimony for consideration by the fact-finders.
It is also contended that Schwenn had no demonstrated knowledge as to the severance damage  in this case the effect upon a tract of land zoned in part for residential purposes and in part for limited commercial purposes (but apparently permitting residences in the commercially zoned area, if erected on three-acre plots) of the erection of high-tension poles on a 100-foot easement across the tract. This argument seems to us insubstantial. A real estate expert of broad and extended general experience should be presumed to be able to form a judgment as to the impairment of the commercial utility for either residential or commercial development of a piece of property, attributable to the presence nearby of high-tension overhead wires strung on poles. The special circumstances involved in such cases as Laing v. United New Jersey R.R. & Canal Co., 54 *180 N.J.L. 576 (E. & A. 1892); Pennsylvania, N.J. & N.Y.R.R. Co. v. Schwarz, 75 N.J.L. 801 (E. & A. 1908); and Van Ness v. New York & N.J. Tel. Co., 78 N.J.L. 511 (E. & A. 1909), make them distinguishable. The weight of the expert's opinion is, of course, another matter, but there was no error in accepting the testimony. Rogers, op. cit., supra, § 303. Compare Hafner v. Ritzinger, 256 Minn. 196, 97 N.W.2d 839 (Sup. Ct. 1959); State ex rel. Kansas City Power & Light Co. v. Gauld, 222 S.W.2d 940 (Mo. Ct. App. 1949), reversed on other grounds, 360 Mo. 795, 230 S.W.2d 850 (Sup. Ct. 1950); Woolam v. Central Power & Light Co., 211 S.W.2d 792 (Tex. Ct. Civ. App. 1948); Ohio Public Service Co. v. Dehring, 34 Ohio App. 532, 172 N.E. 448 (Ct. App. 1929).
Finally, plaintiff complains of having been precluded from redirect examination of its expert Slothus concerning the feasibility of developing this property for residential purposes. We agree with plaintiff that there was a sound basis for the attempted redirect examination in that, on cross-examination of the witness, defendant had attempted to show that the commercially zoned area could be developed for residential purposes, apparently to support its own expert's contentions with regard to the damaging effect of overhead electric wires on nearby residential property. It was therefore appropriate to refute that part of the cross-examination by showing on redirect that the property was not in fact susceptible of development for residential purposes. We do not, however, deem this ruling by the trial judge prejudicial, on the whole case, since the witness's cross-examination did reflect an opinion by him that it would not be desirable to erect residences on three-acre tracts, and so the jury undoubtedly got the import of what was sought to be specifically developed on the redirect examination.
Judgment affirmed.
*181 FREUND, J.A.D. (dissenting).
I am in complete accord with the proposition that an expert witness of long experience in and substantial knowledge of the area to which his land value testimony will relate should be able to qualify himself on the basis of comparable sales information received through whatever channels he, as a professional appraiser, deems proper. It is quite clear that his competency as an expert should not be dependent upon the reliability of such information, as his general expertise is precisely what enables him to digest and interpret the data received, in order to determine its cogency.
However, I am constrained to dissent from my colleagues for the reason that the principles stated above are not the law of this State as espoused by the Court of Errors and Appeals in Essex County Park Comm. v. Brokaw, 107 N.J.L. 110 (E. & A. 1930), and, in my opinion, the instant case falls squarely within the Brokaw rationale.
Brokaw must be read in the context of prior decisions establishing that "the most material circumstance" in qualifying an expert witness as to land values is a showing that the proposed expert was either personally involved in fairly recent sales or purchases of other similar lands in the neighborhood or had knowledge of such sales by others. Brown v. New Jersey Short Line R.R. Co., 76 N.J.L. 795, 797 (E. & A. 1908); Ross v. Com'rs, Palisades Interstate Park, 90 N.J.L. 461, 464-65 (Sup. Ct. 1917); see Turner, New Jersey Evidence (1933), p. 209. But cf. State, by State Highway Commissioner v. Williams, 65 N.J. Super. 518 (App. Div. 1961). The latter rule derived from the recognized proposition that a land value witness must, in order to qualify, be possessed not only of general training in the subject under investigation but also of special knowledge of the vicinity in question.
The "special knowledge" concept was first iterated in Pennsylvania & P.R.R. Co. v. Root, 53 N.J.L. 253 (Sup. Ct. 1891), and was restated in Laing v. United New Jersey R.R. & Canal Co., 54 N.J.L. 576 (E. & A. 1892). Root *182 held that a farmer conversant with local land values could testify as to damage to agricultural conditions occasioned by the location of adjacent railroad tracks, but not as to more intangible forms of injury. Laing stated that an ordinary real estate agent, aware of local property values but unfamiliar with sales of private rights in land forming part of the public highway, was not qualified to evaluate either such a private right or the damage occasioned by conversion into a railroad bed. Mr. Justice Dixon, writing for a unanimous court, in Laing, rejected a purportedly more liberal rule of other jurisdictions, "under which the estimates of any persons who are acquainted with the property, its location, and surroundings, are admissible evidence." He did not find that the cited cases supported the existence of such a rule and said that even if they did, he would not follow the rule. He concluded: "The worthlessness of such testimony is hardly a stronger reason for its rejection than the practically limitless amount of it that might be produced."
What began as a standard for measuring the expertise of a lay witness was soon applied to the witness generally experienced in land valuation but insufficiently conversant with the area in question. And the requirement of knowledge, where obtainable, of specific comparable sales, laid down by a unanimous court in Brown v. New Jersey Short Line R.R. Co., supra, was applied in Ross v. Com'rs, Palisades Interstate Park, supra, to prevent qualification of a witness with over 30 years of land valuation experience in the State and who had previously appraised a parcel one mile south of the subject property.
The "specific sales" requirement, apparently unique among American jurisdictions, see 3 Wigmore, Evidence (3d ed. 1940), § 714, pp. 43-44, n. 4; 32 C.J.S. Evidence § 545, p. 303, note 3, was adopted by the court in Brokaw and comprised the foundation for a holding which, though described by at least one commentator as "peculiar" in its strictness, Annotation, 159 A.L.R. 7, 44 (1945), has yet to be disturbed by our highest court. Cf. Farrell v. New *183 Jersey Power and Light Co., 111 N.J.L. 526 (E. & A. 1933); see Delaware, L. & W.R.R. Co. v. City of Hoboken, 10 N.J. 418, 435 (1952). Mr. Justice (later Chancellor) Campbell, after noting and accepting the language in Ross referring to "knowledge" of comparable sales, construed this to mean non-hearsay knowledge, "* * * such as would be competent evidence if testified to by the proposed witness or, if not, must be substantiated by competent evidence of others before it can have the effect of qualifying the witness to speak as an expert." (107 N.J.L., supra, at p. 112).
While the opinion of the Court of Errors and Appeals lacks any description of the witness there sought to be qualified, the sole issue being the quality of his comparable sales knowledge, I am not persuaded by the majority's intimation that the Brokaw holding can be limited to witnesses of slight valuation experience who attempt to qualify solely through the medium of comparable sales. I feel compelled to give Brokaw a broader reading, for two basic reasons: (1) prior case law, culminating in Ross v. Com'rs, Palisades Interstate Park, supra, embraced local lay resident and experienced appraiser alike in its recognition of specific sales knowledge as a precondition to "expert" status in any particular proceeding, and the court in Brokaw, construing Ross, in no way limited its scope; and (2) subsequent reference to and reliance upon Brokaw do not comport with the highly restricted meaning accorded it by the majority. Within a year following the decision, the Legislature enacted L. 1931, c. 229, R.S. 2:101-1, now N.J.S. 2A:83-1, providing that in certain enumerated proceedings involving land valuation, "any person offered as a witness * * * shall be competent to testify as to sales of comparable land * * *," from hearsay sources and that testimony shall be competent and admissible. While the statute also operates to permit hearsay comparable sales testimony as substantive evidence of value, its major thrust is directed at the holding in Brokaw obstructing the qualification of land value experts. *184 The Statement attached to the bill, A-377, as adopted March 24, 1931, leaves little doubt on this point:
"This act is designed to meet the situation created by the opinion of the * * * [Court of Errors and Appeals] in the case of the Essex County Park Commissioners vs. Brokaw ([107 N.J.L. 110] 150 Atl. page 387). The practical effect of the * * * [Court of Errors and Appeals] opinion is to preclude witnesses from testifying in proceedings for the purchase or sale of land, unless they have actually made sales of comparable property. This rule works a great hardship. A witness may be a real estate broker of many years experience; thoroughly familiar with the value of comparable property in the neighborhood, such information being obtained in the course of his business, but he is precluded from testifying unless he has personally made sales. It has happened that in certain sections of our State no sales of land have been made for periods of more than fifty years, and where proceedings are instituted for the purchase or sale of the property, or condemnation proceedings resorted to, no witness on either side would be competent to testify as to value, because of the fact that no sales had been made. This act permits brokers who have obtained sufficient knowledge and who are experienced to testify in such proceedings. The testimony permitted by this act is made competent and permissible only; it in no way affects the weight of the evidence."
R.S. 2:101-1 was construed in White v. State Board of Tax Appeals, 123 N.J.L. 350 (Sup. Ct. 1939), where the court summarized the defendant's argument to be that the statute was solely remedial of Brokaw, i.e., was enacted "solely with the intention of permitting real estate experts to testify as to the sales of comparable property in which the expert in question was not concerned, but which he knew of from information or knowledge obtained from others, and that the legislature never intended that the witness need not be an expert." (Emphasis added.) The court, however, gave the statute a more expansive reading, said that the act was not "confined to expert witnesses," and held a layman also to have been qualified by the statute to testify as to comparable sales.
Consideration of the statute thus reinforces both my reading of Brokaw and my certainty as to its viability in *185 the instant case. The legislation is corrective of the Brokaw holding in all situations but those expressly excepted  "any action or proceeding instituted by any individual or private corporation authorized to take property for public use where compensation must first be made to the owner thereof." There is little dispute that Rockland Electric constitutes such a private corporation, authorized by statute to obtain rights-of-way by condemnation, see R.S. 48:7-3, and that this is the type of proceeding contemplated by the proviso. (I would agree with the majority, however, that the constitutionality of the statutory proviso, not raised below, not included in the "statement of questions involved," and inadequately briefed by the parties, should not be here considered. R.R. 1:7-1(c). See Abel v. City of Elizabeth Bd. of Works, 63 N.J. Super. 500, 508 (App. Div. 1960); Diaz v. Newark Industrial Spraying, Inc., 65 N.J. Super. 249, 252 (App. Div. 1961)).
The statutory limitation of the Brokaw ruling to a narrow class of proceedings may help to explain why the problem raised by it has not been brought to our attention on prior occasions and why the qualification of expert land value witnesses has proceeded, by and large, in relatively smooth fashion. However, the fact that Brokaw is by legislative mandate a "dead letter" in all but the instant situation in no way empowers this court to complete its demise.
In the instant case, the witness, Schwenn, expressed knowledge of three comparable sales. He obtained his information as to the first from the owner of the development and consultation of the record of deeds; as to the second, from an attorney involved in the transaction and perusal of the records; and as to the third, merely from consultation of the records. Neither the owner of the first property nor the attorney for the second was available in court for cross-examination. All three of these sources were hearsay, varying perhaps in degree of reliability, but equally proscribed by Brokaw. While Rockland's expert also qualified on the basis of hearsay knowledge of comparable sales, the *186 owner of one of the comparable properties had been subpoenaed and would have been made available for cross-examination, if necessary. The defense attorney, however, decided to waive objection to the witness's qualifications.
Schwenn estimated defendant's damages as a consequence of the condemnation at $26,100. Plaintiff's two witnesses recited figures of $3,800 and $3,240. The substantiality of the trial court's error in contravening Brokaw and qualifying the witness is self-evident.
It is true that Schwenn testified that he had previously appraised the area in question, including the very right-of-way here in issue; moreover, he has had prior experience as an expert witness in other litigation in our courts. But I do not see how either of these features does more than to cast additional doubt on the soundness of the Brokaw decision. They in no way aid in sidestepping its applicability. The source of Schwenn's information in his appraisal of the Tennessee Gas easement is not brought to light in the record before us. If, in preparing that prior appraisal, he had direct knowledge of such comparable sales as would here qualify him, he did not so indicate. It was not within the admittedly broad discretion of the trial judge to assume, over repeated objection to his qualifications, that Schwenn had such knowledge. The sound discretion of a trial judge in qualifying expert witnesses cannot override an established and precise rule of law guiding him in a particular situation.
Brokaw, and the decisions leading up to it, manifestly require that: (1) a material element of the qualification of the land value expert consist of comparable sales information; and (2) such information be related in a manner not violative of the hearsay rule. These requirements were not met in the instant case.
This is not a situation in which a salutary exception may neatly be carved out of a dubious rule. The majority, in my opinion, strikes at the very marrow of a decision of a court of higher standing than this one. Policy considerations implicit *187 in the doctrine of stare decisis aside, see Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29, 42-48 (1958), respect for our position as an intermediate appellate court in the orderly evolution of the judicial process obligates me to follow the clear dictate of our State's then-highest tribunal. Nixon v. Lawhon, 32 N.J. Super. 351, 355 (App. Div. 1954).
For the reasons stated above, I would reverse and remand for a new trial.