446 P.2d 692

**CITY OF TUCSON, a municipal corporation, Appellant,**

v.

**Reuben LaFORGE and Jane Doe LaForge, husband and wife, Appellees.**

**No. 2 CA–CIV 503.**

Court of Appeals of Arizona.

Oct. 29, 1968.

Dino DeConcini, City Atty., William N. Sherrill, Asst. City Atty., Tucson, for appellant.

Dunseath, Stubbs & Burch, by Robert C. Stubbs, Tucson, for appellees.

HATHAWAY, Chief Judge.

The City of Tucson seeks review of a judgment entered in condemnation proceedings instituted by it in superior court, Pima County. The questions presented for review are directed to the trial court's rulings as to evidence and instructions.

The defendant was the owner of a parcel of land located on the south side of West Grant Road, one block west of Miracle Mile. Before condemnation, the property had 150 feet of frontage on Grant Road and a depth of 140.5 feet. The property was improved with a 5,000 square foot building (see illustrative drawing) which was specially designed for use as a warehouse-distribution facility.

In the "before" situation, there was no curbing along Grant Road and large trucks, approximately 50 to 60 feet in length, were used by lessees of the property. From August, 1958, until shortly before the condemnation action was filed, the property was continuously rented without any effort on the part of the property owner. Upon learning, in 1965, of the widening of Grant Road, a tenant who was paying $350 a month rental to the defendant did not exercise its option to renew the lease, and moved out in March, 1966. The property, which was zoned for industrial uses, was shown to numerous prospective tenants, both by the property owner and a real estate broker, and was finally rented to a janitorial supply business for $200 per month.

As a result of the condemnation the City acquired the frontage on Grant Road to a depth of 30 feet. In the "after" situation, there remained only 34.4 feet in front of the building and a curb was constructed along the roadway with three curb cuts providing access to the LaForge property. (The center one was approximately 20 feet in width and the other two were 30 feet in width.) There was testimony to the effect that in the "before" situation, it was possible to bring in at least one 50 to 60 foot truck for loading or unloading purposes but that it was impossible to do so in the "after" situation.

The property owner testified that he had sustained damages in the amount of $35,000 to the property remaining and that the value of the property taken was $7,200. The property owner's appraiser testified that in her opinion the damages for the part taken were $7,200 and the severance damages were $16,452. The opinion of the City's appraiser, on the other hand, was that the damages for the part taken were $5,100 and severance damages were only $1,500. The latter amount was the cost of constructing a dock which would make it possible to rent the property, in his opinion, for $370 per month. The jury returned a verdict for the property owner of $23,000, consisting of $6,000 for the land taken and $17,000 in severance damages.

■ The City contends that it was error to permit the property owner's appraiser to testify as to sale of certain other properties since they were either non-comparable or too remote in time. Initially, it must be pointed out that evidence of the sale price of similar property in the vicinity of the condemned property may be admissible for two different and distinct purposes, i. e., as substantive proof of value of the condemned property or in support of and as background for an ex-

pert witness's opinion as to the value of the property taken. United States v. Smith, 355 F.2d 807 (5th Cir. 1966); State Roads Commission v. Adams, 238 Md. 371, 209 A.2d 247 (1965); City of Trenton v. Penn-Jersey Auto Stores, Inc., 90 N.J. Super. 221, 217 A.2d 17 (1966); West Kentucky Coal Company v. Commonwealth, Ky., 368 S.W.2d 738 (1963).

■■ Comparability is a question of fact and trial judges have broad discretion in ruling on the admissibility of evidence of comparable sales. Town of Williams v. Perrin, 70 Ariz. 157, 217 P.2d 918 (1950); United States v. Certain Interests in Property, 326 F.2d 109 (2d Cir. 1964), cert. denied, 377 U.S. 978, 84 S.Ct. 1884, 12 L.Ed. 2d 747. This is equally true where the other sales are used as a basis for the expert's opinion. State Roads Commission of Maryland v. Smith, 224 Md. 537, 168 A.2d 705 (1961); Berry v. State, 103 N.H. 141, 167 A.2d 437 (1961); State Highway Commission v. Newton, Wyo., 395 P.2d 606 (1964); Routh v. State Highway Commission, Wyo., 402 P.2d 706 (1965); Crouch v. State, 413 S.W.2d 141 (Tex. Civ.App.1967); Department of Public Works and Buildings v. Lankford, 65 Ill. App.2d 133, 212 N.E.2d 14 (1965). Where, as here, the other sales were offered not as direct indicia of value, but rather to serve as a basis for the expert's opinion, the comparability requirement is less strict. United States v. 60.14 Acres of Land, etc., 362 F.2d 660 (3d Cir. 1966); United States v. Johnson, 285 F.2d 35 (9th Cir. 1960); State ex rel. Price v. 0.0673 Acres of Land, etc., 224 A.2d 598 (Del.1966); State Highway Commission v. Hayes Estate, 140 N.W.2d 680 (S.D.1966); State Highway Commission v. Newton, supra.

■ We find no merit to the City's objection, predicated upon lack of probative value, to the admission of these other sales.[1] The fallacy of the City's argument,

---

[1] The City argued that sales 6 to 8 years prior to the date of valuation were not "relevant on the issue of value." How-

ever, in United States v. 2,635.04 Acres of Land, etc., 336 F.2d 646 (6th Cir. 1964) it was held that admission of a

and the resultant inappositeness of the authorities cited in support thereof, is that these other sales were not offered as substantive proof of the value of the condemned property but merely as foundation for the expert opinion of value. If the sales were not comparable, which could be brought out on cross-examination and called to the jury's attention in final argument, such factor merely bears upon the weight to be accorded the expert's opinion. South San Francisco Unified School District v. Scopesi, 187 Cal.App.2d 45, 9 Cal. Rptr. 459 (1960); State v. Helvey, 375 S.W. 2d 744 (Tex.Civ.App.1964); Weeden v. City of Beloit, 29 Wis.2d 662, 139 N.W.2d 616 (1966); Rockland Electric Company v. Bolo Corporation, 66 N.J.Super. 171, 168 A.2d 817 (1961); see also International Paper Company v. United States, 227 F.2d 201 (5th Cir. 1955).

■ The City also challenges the propriety of permitting cross-examination of the City's appraiser with regard to two other property appraisals he had made in connection with this same construction project. Wide latitude is allowed in cross-examination of expert witnesses on the subject of value for purposes of testing their knowledge, judgment, bias and the validity of their opinions. People ex rel. Dept. of Public Works v. Wasserman, 240 Cal.App. 2d 716, 50 Cal.Rptr. 95 (1966); State by Lord v. Pearson, 260 Minn. 477, 110 N.W. 2d 206 (1961). These other appraisals, the subject of this cross-examination, were both nearby to the LaForge property and had frontage on Grant Road. We find no error in allowing the cross-examination of the State's expert with regard to his appraisals made of other nearby property in order to test, for impeachment purposes, his knowledge of land and his qualifications as an expert witness. Commonwealth, Dept. of Highways v. Eubank, Ky., 369 S.W.2d 15 (1963); State v. Weidel, 385 S. W.2d 625 (Tex.Civ.App.1964); County of Contra Costa v. East Bay Municipal District, 175 Cal.App.2d 834, 1 Cal.Rptr. 60 (1959).

■ As heretofore noted, the property owner testified as to his opinion of value. Of course, as an owner he was competent to so testify. Board of Regents, etc. v. Cannon, 86 Ariz. 176, 342 P.2d 207 (1959); State ex rel. Herman v. Lopez, 8 Ariz.App. 61, 442 P.2d 884 (1968). The City now complains that the trial court erred in restricting its cross-examination of the property owner and that "the continual restrictions resulted in prejudicial error to the City." In State v. Lopez, supra, we recognized the right of the condemnor to cross-examine an owner to expose the method utilized in arriving at his value figure. The City contends that the questions propounded sought to elicit answers which would serve to discredit the witness's estimate of value.

■ The property owner had testified that he based his opinion of value on the difference in rental income before and after the taking, i. e., $350 a month before and $200 per month after. The only question, as to which an objection was sustained, which bears any relation to the landowner's *method* in computing value, was an attempt to obtain an average annual rental figure by averaging the $200 per month six-month rental for one half the building with the $350 per month six-month rental for the entire building. We agree with the trial court's termination of this line of inquiry. Counsel for the City admitted that the testimony revealed that $200 per month had been paid for the first six months and $350

1954 sale as to a 1961 condemnation was not an abuse of discretion on the theory of remoteness.

The City also objected to evidence of sale of property of like zoning but located two blocks off Grant Road in the general vicinity of the LaForge property.

See Rockland Electric Company v. Bolo Corporation, 66 N.J.Super. 171, 168 A. 2d 817 (1961) and Commonwealth, Department of Highways v. Givens Bros., Inc., Ky., 398 S.W.2d 867 (1965) wherein similar objections were not sustained.

per month thereafter. He stated that he merely wanted to correct a misconception that the property was rented for $350 per month. Averaging a rental paid for one half a building together with the rental paid for the entire building would not produce an average monthly rental for the entire building.

The trial court refused to allow the City to cross-examine the owner as to whether he owned any other property in Tucson and as to his knowledge of other truck terminal operations. Although we believe the City should have been afforded an opportunity to test the owner's expertise, we conclude that the error was merely harmless and did not "affect the substantial rights" of the City. Rule 61, Rules of Civil Procedure, 16 A.R.S.; see also State ex rel. Morrison v. Jay Six Cattle Company, 88 Ariz. 97, 353 P.2d 185 (1960).

The City complains of the fact that the trial court permitted Mr. Tregonis, city engineer, to testify, over objection, concerning the amount that Grant Road property owners would be assessed for costs of the improvement project. Suffice it to say that the subject of financing the highway was opened up by counsel for the City on direct examination of the engineer. He testified in response to a question as to how the highway was being financed:

"The City is paying for 35 per cent of the cost. Of this 35 per cent, 10 per cent of the total cost is being assessed to abutting property owners, which is our standard policy in regard to paving in front of any property, that they pay for their normal residential street width. This amounts to about 10 per cent of the total cost of the job."

The City cannot now be heard to complain of inquiry into assessments when it introduced the subject itself. It additionally argues for the first time on appeal that

evidence of assessments is inadmissible in ascertaining damages. See City of Eugene v. Wiley, 225 Or. 327, 358 P.2d 286 (1960). We find no error in this regard since the trial court expressly instructed the jury to disregard any evidence pertaining to assessments in ascertaining damages.

The City called as a witness an experienced truck driver who testified on direct examination that, although he had not actually driven a truck onto the LaForge property, he could maneuver a large semi-truck up to a loading platform that projected from the building. He demonstrated how he would accomplish this by indicating with his hands on a scale drawing of the property the various maneuvers he would undertake. On cross-examination, he was asked to demonstrate the same by use of a model truck, one of the City's exhibits admitted into evidence. The City now contends that this was error since the model, although to scale, did not have turning axles and therefore the jury would have been misled by the demonstration.

A witness may use various objects to explain or illustrate his testimony. Posner v. New York Life Insurance Company, 56 Ariz. 202, 106 P.2d 488 (1940); 32 C.J.S. Evidence § 603, at 760; Udall, Arizona Law of Evidence § 131, at 273. Where such use would not tend to mislead the jury, use of a model is permissible even though it is not a facsimile in every detail. Arkansas State Highway Commission v. Rhodes, 240 Ark. 565, 401 S.W.2d 558 (1966). Here the jury was fully aware of the fact that the axles were stationary, hence we cannot say that they were misled by the use of the model.

The remaining assertions of error are directed to the giving or refusal to give certain instructions. The City contends that it was error to refuse its requested instructions Nos. 19 and 20.[2] Our review

2. Requested Instruction No. 19:
"In ascertaining the highest and best use and the value of only the land, you shall consider the land as though it were vacant. In the use of this property, you may consider the fact that the zoning laws provide that the owner could either build to within 12 feet

of instructions given or refused is circumscribed by the objections raised in the trial court. Tanner v. Pacioni, 3 Ariz.App. 297, 413 P.2d 863 (1966). As to instruction No. 19, the City argued that it should be given since "it shows what a property owner can do with his land according to the zoning laws of the City of Tucson."

Be that as it may, the trial court has no duty to reword instructions and its refusal to give partially correct instructions is not error. O'Rielly Motor Co. v. Rich, 3 Ariz.App. 21, 411 P.2d 194 (1966). Damages to a remaining parcel of land are assessed as the difference between its value immediately before the date the summons for condemnation is filed and the market value immediately after severance. State ex rel. Herman v. Tucson Title Ins. Co., 101 Ariz. 415, 420 P.2d 286 (1966); County of Maricopa v. Paysnoe, 83 Ariz. 236, 319 P.2d 995 (1957). Here the parcel was improved, a factor which entered into the value determination. It would therefore have been improper to exclude the improvements from the jury's consideration.

As to instruction No. 20, the City objected to its refusal on the grounds that "it is a correct statement of law." Such objection does not suffice to afford appellate consideration. Nielson v. Flashberg, 101 Ariz. 335, 419 P.2d 514 (1966).

The City makes casual reference to its refused instruction No. 8, modification of its instruction No. 16, and the giving of the property owner's instruction No. 19, and then argues that the trial court committed fundamental error in failing to set forth elementary propositions of law, thus leaving the jury free to consider any speculative or remote use that might come into their minds. As to No. 8, we note that the City made no objection in the trial court to its omission and we further note that the trial court adequately instructed the jury to disregard any future contemplated use of the property on the part of the property owner as an element of value. We thus fail to see any "fundamental error" as contended by the City.

The trial court refused to instruct the jury, per the City's request, to disregard the construction and location of curbs and curb cuts in assessing damages. The City's objections to the refusal thereof, however, were insufficient to invoke appellate review. Nielson v. Flashberg, supra. It is further contended on appeal that the error in refusing to give these instructions "is further compounded" by the giving of the property owner's instruction Nos. 2 and 3 wherein the jury was instructed that as a matter of law the property owner had access in the "before" situation and that the taking or material impairment thereof was compensable. The record discloses no objection to the giving of these instructions. We find no fundamental error in these instructions to justify reversal notwithstanding the City's failure to preserve its record. See Moore v. Gray, 3 Ariz.App. 309, 414 P.2d 158 (1966).

Finding no error in the trial court's refusal to grant the City a new trial, the judgment is affirmed.

MOLLOY and KRUCKER, JJ., concur.

---

of the rear property line or he could build on the rear property line if he provided an area equivalent to 900 square feet so loading and unloading trucks can back into this area and be free of the alley traffic. As applied to only the west feet, the owner could either build within 12 feet of the rear lot line or build to the rear lot line and provide 300 square feet off the alley for loading and unloading trucks."
Requested Instruction No. 20:
"You are instructed that it is the law in Arizona that drivers of vehicles shall not back the same unless the movement can be made with reasonable safety and without interfering with other traffic."