## McELROY v. KANSAS CITY AND INDEPENDENCE AIR LINE, Appellant.

Division Two, March 17, 1903.

1. **Right of Way**: MEASURE OF DAMAGES: FIXED BY CONTRACT: PECULIAR BENEFITS. The measure of damages for the taking of private lands by a railroad company for a right of way, whether taken in condemnation proceedings or without license or other right, is the value of the land taken, plus the damages, if any, to the tract of which it forms a part, less the benefits, if any, peculiar to such tract arising from running the road through it. But where by contract it is agreed that the land-owner is to be "allowed and paid the value of the land taken," the measure of damages is fixed by the contract and the benefits to the land not taken cannot be deducted from the value of the land taken.

2. ———: ———: WAIVER BY CONTRACT: ACTION ON CONTRACT: PECULIAR BENEFITS: ABANDONMENT. By the terms of a contract a railroad's unlawful entry upon land theretofore made, was, for a money consideration therein named and paid, waived, and the company permitted to proceed with the construction of its railroad, it being further agreed that the land owner should "be allowed and paid the value of the bridge abutments on his land as well as for the land taken," and that that value should be ascertained by condemnation proceedings in case the parties could not agree thereon before a date named. *Held*, that, the company having failed to either agree upon compensation or have the land condemned, the land-owner's course to have the value ascertained is by suit on the contract, but in such suit the measure of damages does not include the damage done to the remainder of the tract not so taken, nor can the benefits to the tract not taken be deducted from the value actually taken, and if in a suit on the contract the land-owner includes a demand for damages to the land not so taken a failure to introduce evidence to support that demand is to be considered an abandonment of the demand itself.

3. ———: ———: PECULIAR BENEFITS: HOW PAYABLE. Where a contract for the running of a railroad over land provided that the land-owner is to be "allowed and paid the value of the bridge abutments on his land as well as for the land taken," in a suit on that contract the damages to the land taken can be paid only in money. They can not be paid by setting off against them benefits to lands not taken.

4. ———: ———: ———: DAMAGES TO TRACT NOT TAKEN: BENEFITS: ABANDONMENT. In such a suit on such a contract the railroad company can not complain that a land-owner, in a suit for the value of the land taken by it for a right of way, abandoned a demand for damages to the tract not taken, by refusing to introduce evidence thereon, even though the benefits to the tract not taken exceed the damages to the same tract, for such excess could not be set off against the value of the land actually taken, the damages being fixed by the contract at the value of the land taken.

5. ———: ———: DATE. Where by contract a railroad's unlawful entry upon land was waived and it was agreed therein that the value of the land taken should be ascertained by agreement or condemnation proceeding before a fixed date, in a suit on the contract to which the land-owner is compelled to resort in order to recover that value, the value to be ascertained is its value on the date of the unlawful entry.

Appeal from Jackson Circuit Court.—*Hon. John W. Henry*, Judge.

AFFIRMED.

*Lathrop, Morrow, Fox & Moore* and *Cyrus Crane* for appellant.

(1) The court erred in refusing to permit defendant to prove "special" or "peculiar" benefits to the remainder of plaintiff's tract. Newby v. Platte County, 25 Mo. 258; Railroad v. Richardson, 45 Mo. 466; Lee v. Railroad, 53 Mo. 178; Railroad v. Ridge, 57 Mo. 599; Bridge Co. v. Ring, 58 Mo. 491; Hosher v. Railroad, 60 Mo. 303; Board of Commissioners v. Shields, 62 Mo. 247; Railroad v. Waldo, 70 Mo. 629; Combs v. Smith, 78 Mo. 39; Jackson County v. Waldo, 85 Mo. 637; Daugherty v. Brown, 91 Mo. 26; McRey-

nolds v. Railroad, 110 Mo. 484; Ragan v. Railroad, 111 Mo. 456; Lingo v. Burford, 112 Mo. 149; Doyle v. Railroad, 113 Mo. 280; Hickman v. City of Kansas, 120 Mo. 110; Union Elevator Co. v. Railroad, 135 Mo. 353; Lewis on Eminent Domain, sec. 469. (2) The court erred in fixing the time at which the value of the land should be determined. Railroad v. Randolph Town Site Co., 103 Mo. 451; Railroad v. Fowler, 113 Mo. 458; In the matter of Forsyth Boulevard, 127 Mo. 421.

*Holmes & Perry* for respondent.

(1) It was not error to exclude evidence of special benefits to plaintiff's property not occupied by the defendant's railroad. This is an action founded on contract, to recover the value of plaintiff's land and of the stone bridge abutments situated thereon, occupied by defendant with its railroad, in accordance with the provisions of said contract. While the petition also alleged damages to plaintiff's remaining land and prayed for their recovery, this claim was abandoned at the very outset of the trial. In the interpretation of contracts, the expression of one thing is the exclusion of another. *Expressio unius est exclusio alterius.* Here we have a contract most solemnly and carefully drawn which provides explicitly that plaintiff shall be paid the value of his property. If it had been intended or contemplated that this value should be reduced or offset by special benefits to other property of plaintiff, it would have been a very simple matter to make the contract say so, and this not having been done, the contract excludes the idea that any such benefits are to be so considered, precisely the same as if it had provided for such exclusion in so many words. (2) The value of the land and bridge abutments was properly ascertained as of December, 1891. Even in condemnation proceedings, the rule contended for by appellant's counsel is not absolute and has no application to cases where, as here, the railroad company entered and took possession of the land and constructed its railroad pur-

suant to contract with the owner. Railroad v. Randolph Townsite Co., 103 Mo. 451, so much relied on by opposing counsel, is thus differentiated from the case at bar where the entry and construction of the railroad were pursuant to a written contract, with the landowner which also provided for a postponement of payment to a subsequent day of the value of the land taken and of the bridge abutments thereon. But there is a subsequent case closely analogous to the case at bar in which it is held that in an action against a railroad company for the appropriation of plaintiff's land for railroad right of way, the value should be assessed as of the time when the defendant entered and graded the railroad and laid its tracks. Ragan v. Railroad, 111 Mo. 456.

BURGESS, J.—This is an action bottomed on a contract for the value of a strip of plaintiff's land, taken by defendant for railroad purposes, and also the value of certain stone abutments situated on the land taken, and used by defendant in the construction of its railroad.

In December, 1891, the defendant company, without the consent of plaintiff, entered upon the strip of land in question and began the construction of its road across it, whereupon plaintiff began suit by injunction against defendant to prevent it from proceeding with the work. Thereafter, on December 31, 1891, plaintiff and defendant entered into a written contract, which is as follows:

"It is agreed between Hugh L. McElroy and the Kansas City & Independence Air Line, a railroad corporation, that,

"First. In consideration of a bonus of seven hundred and fifty dollars to said McElroy paid by said corporation, the receipt of which is hereby acknowledged, said McElroy hereby waives the right to sue said railroad company, its agents, servants or contractors, for trespass in entering upon and constructing its railroad across and over the lands belonging to said

McElroy mentioned and specified in suit No. 13055 in division No. 1 of the circuit court of Jackson county, Missouri, and further hereby gives license to said railroad company, its agents, servants or contractors, to enter upon his, the said McElroy's, land in Jackson county, Missouri, on which said corporation's railroad has been located, and to construct, maintain and operate its railroad thereon in advance of acquiring title to said lands for that purpose, either by agreement with the said McElroy or by condemnation proceedings; but no title to said lands shall pass to said corporation until the same shall be so acquired either by agreement or condemnation, as aforesaid.

"Second.    Said McElroy shall dismiss his injunction suit now pending against said railroad, and said corporation shall waive all damages and right of action on the injunction bond, and shall dismiss its suit for condemnation now pending against said McElroy and shall commence no new suit for condemnation of right of way until after the 15th day of April, A. D. 1892, without further attempt to agree with the said McElroy, his heirs or assigns, as to compensation as aforesaid, and not then within that period if the said McElroy shall not before the 15th day of April return to Jackson county, Missouri, so as to give the matter his personal attention; but should no agreement be had between the parties before the said 15th day of April, then the said railroad corporation may at any time after the said date, or after the said McElroy returns and the said parties can not agree as to compensation, bring suit for a condemnation of right of way across the lands of said McElroy, and the said McElroy hereby agrees to enter his appearance in said suit without further service of notice of said condemnation proceedings, and the said suit shall then proceed whether or not the said McElroy is present.    It is hereby further agreed, that no allowance shall be made in favor of said corporation by reason of said bonus, nor shall it be brought to the attention of any commissioners or jury which may have the matter of condemnation of

right of way across said lands before them.   It is further agreed that in such condemnation proceedings said McElroy shall be allowed and paid the value of the bridge abutments' on his said land as well as for the land taken.

"Third.   It is hereby further agreed between the parties hereto, that the two hundred dollars previously agreed upon by them shall be paid for the strip of land heretofore sought to be acquired by the Missouri Pacific Railroad Company from said McElroy, and that said corporation shall acquire said strip of land by paying therefor the said sum of two hundred dollars within fifteen days from this date; but the price to be so paid for the last mentioned strip shall in no way be brought to the attention of the commissioners or jury that may be selected to assess the damages caused the said McElroy by said railroad company's condemning and appropriating so much of the remainder of his land as may be necessary for its right of way.

"In witness whereof the parties have hereunto set their hands this 30th day of December, 1891."

The petition alleges that in accordance with the provisions of said contract, the defendant did enter upon the tracts of land sued for and built a line of railway, and though frequently requested, has failed and refused to institute the condemnation proceeding so agreed to be brought or to pay to the plaintiff the fair and reasonable value of the land so taken by defendant, the damage done to the remainder of the tract, and the value of the bridge abutments.   That in December, 1891, and January, 1892, the fair and reasonable market value of the tracts of land in question was and ever since has been the sum of eight thousand dollars, the value of the bridge abutments on said land was two thousand dollars, and that the remainder of one of the tracts of land in question was damaged in the sum of five thousand dollars.

Defendant by its answer admits that defendant is a corporation, admits the execution of the contract sued on, admits that the defendant did construct on the land

a line of railway, and alleges that said railway was constructed by permission of and pursuant to said contract. The answer then denies all other allegations in the petition.

On the trial of the case, evidence was introduced by plaintiff tending to show the value of the land taken in December, 1891, and, although the petition asked for damages to the remainder of the tract not taken, the plaintiff introduced no evidence as to such damages and did not attempt to recover therefor.

On the trial of the case the court refused to permit defendant to show any "special" or "peculiar" benefits accruing from the building of the railroad to the remainder of plaintiff's tract not taken. The court also confined the time of the determination of the value of the plaintiff's land taken, to December, 1891. Defendant excepted to the ruling of the court in both of these particulars. Both sides introduced evidence as to the value of the land. The defendant by the ruling of the court was confined to its value in December, 1891.

Over the objection and exception of defendant the court instructed the jury at the instance of plaintiff as follows:

"1. The court instructs the jury that under the pleadings and evidence in this case your verdict must be for the plaintiff, and in assessing his damages you should allow him the value of his land taken by the defendant for right of way for its railroad at the time the same was so taken, and in addition thereto the value of the bridge abutments on said land at said time, all at the market value as shown by the evidence, and on the amounts so found you may allow and add interest at the rate of six per cent per annum from the time said land and abutments were so taken to the present time, in all not exceeding the sum of fifteen thousand dollars. Your verdict should be in the following form: 'We, the jury, find for the plaintiff and assess his damages at the sum of . . . dollars.'

"2. The court instructs the jury that neither the $750 nor the $200 mentioned in the contract read in evi-

dence were paid to the plaintiff in any respect as or on account of compensation for the land or stone abutments of plaintiff taken by defendant for its railroad, and in arriving at the amount of your verdict for plaintiff you are instructed not to give the defendant any credit whatever for either of said payments.''

Thereupon the defendant requested the court to give the jury the following instructions:

''1.   The court instructs the jury that the plaintiff, or those under whom he claims, derived title to the land appropriated by the defendant from the United States Government, and that said land was granted by the Government and was held by the plaintiff subject to the condition that the State of Missouri, either actually, or indirectly through others duly authorized by it, might take any part of the land for public use upon the payment of just compensation, and that the Kansas City & Independence Air Line is duly authorized and empowered by the State of Missouri to take the strips of land mentioned in plaintiff's petition for a right of way for its railroad, which is a public use; that defendant entered upon the land by permission of the plaintiffs; that there was nothing unlawful in the taking; that the taking was lawful and proper, and the only thing for the jury to determine is the just compensation that the defendant should receive, to be measured and ascertained as directed in other instructions.

''2.   The court instructs the jury that in estimating the plaintiff's damages, if any, they should estimate the same as done to the market value of the land taken, and that the phrase 'market value' as used in these instructions does not mean what the plaintiff held the land at, nor what he asked for it, nor does it mean what the land may have been worth to any particular person or corporation for any particular purpose; but said phrase does mean the fair selling value of the land in the market, to be used for any of the purposes to which it was susceptible of being put, either in its then

condition or any condition to which it was reasonably susceptible of being changed.

"2a. The court instructs the jury that they should not put down the amount each juror believes should be assessed and add these amounts up and divide by twelve to arrive at a verdict; and all verdicts arrived at in such manner are illegal.

"3. The court instructs the jury that in estimating the damages to plaintiff's land they should assess the same as of the date of the filing of plaintiff's petition.

"4. The court instructs the jury that you should not take into consideration the evidence of the witness . . . Cunningham, offered by the plaintiff, as to values of land in question.

"5. The court withdraws from the jury all evidence as to the value of the land in question in the month of December, 1891.

"6. The court instructs the jury that in assessing the plaintiff's damages they should assess the same as they would have been in April, 1892.

"7. The court instructs the jury that you shall return a verdict for the defendant except as to the costs that were made and incurred in this suit up to the time of the filing of the condemnation suit of Kansas City & Independence Air Line against Hugh L. McElroy, which suit was filed in accordance with contract mentioned in the petition.

"8. The court instructs the jury that from the amount of the market value of the land and the abutments taken by the defendant, as shown by the pleadings and the evidence, you shall deduct therefrom the sum of $750 heretofore paid by the defendant to Hugh L. McElroy, with interest thereon from the . . . day of . . . 18 . . .

"9. The court instructs the jury that in estimating the damages of the plaintiff, if any, they should deduct therefrom the amount of peculiar benefits, if any, that may have accrued to the market value of the land of the plaintiff not taken and of which the strip

taken forms a part, by means of the operation of the railroad as the same is located across said land; and by the term 'peculiar benefits' is meant such as are peculiar to the land described in plaintiff's petition and such as are not common to other lands in the same vicinity.

"10.   The court instructs the jury that because a railroad could not get into Kansas City so conveniently by any other route than over plaintiff's land, if they should believe such to be the fact, yet this does not constitute an element of value for which the plaintiff is entitled to receive compensation.

"11.   The court instructs the jury that if they believe from the evidence that plaintiff's land was especially valuable for manufactories and that it would have been more valuable for such purpose by reason of having a suburban line of railroad located on it, then such facilities would constitute a peculiar benefit."

Of which instructions those numbered 1, 2 and 2a the court gave; and those numbered 3, 4, 5, 6, 7, 8, 9, 10 and 11 the court refused to give to the jury, to which action of the court in refusing to give said instructions numbered 3, 4, 5, 6, 7, 8, 9, 10 and 11 the defendant at the time excepted.

The trial resulted in a verdict and judgment for plaintiff in the sum of $4,750, from which defendant, after unsuccessful motions for a new trial and in arrest, appeals.

It is said in behalf of defendant that the court erred in refusing to permit defendant to prove "special" or "peculiar" benefits to that part of plaintiff's tract of land not taken by defendant for railroad purposes.

It is well settled in this State that the measure of damages for the taking of private lands by a railroad corporation for a right of way is the value of the land taken, and the damage, if any, to the tract of which it forms a part, from which must be deducted the benefits, if any, peculiar to such tract arising from running the road through it.

This is the rule whether the land be taken in condemnation proceedings, or without license or other right. [McReynolds v. Railroad, 110 Mo. 484; Ragan v. Railroad, 111 Mo. 456; Lingo v. Burford, 112 Mo. 149; Doyle v. Railroad, 113 Mo. 280; Kansas City v. Morton, 117 Mo. 446; Hickman v. City of Kansas, 120 Mo. 110; Bennett v. Woody, 137 Mo. 377.]

The same rule applies where the land of the citizen has been appropriated for like purposes and without compensation, and without having the same legally condemned, in a suit by him for the land taken and damages to the remainder of the tract. [Combs v. Smith, 78 Mo. 32; Allen v. Railroad, 84 Mo. 646; McReynolds v. Railroad, supra.] But the case in hand is based upon a contract by the terms of which defendant's unlawful entry upon the land theretofore made was, for the consideration of $750 paid plaintiff by defendant waived, and defendant allowed to proceed with the construction of its railroad in pursuance to an express provision in the second paragraph of the contract, by which it is provided that, "said McElroy shall be allowed and paid the value of the bridge abutments on his said land as well as for the land taken." This provision in the contract is susceptible of no other construction than that of a promise by defendant to pay plaintiff the value of the land taken by it, as well also as the value of the stone abutments situated on said land. If this was not the intention of the parties and is not the proper construction to be placed on the contract, why the necessity of it, when the same result could have been reached in a proceeding by defendant to condemn the land? Clearly, to obviate the necessity of a proceeding for that purpose. That defendant had the right to contract with McElroy that he should be allowed and paid for the land and bridge abutments thereon, will not be questioned, and this seems to us to be the legal effect of this contract, the price of the land and stone abutments to be thereafter agreed upon, defendant, however, to take immediate possession but the title to remain in plaintiff until payment should

be made. And in order that these values might be ascertained at an early date, it was part of the contract that defendant was to institute condemnation proceedings for that purpose not before April 15, 1892; and that plaintiff might be certain to be allowed and paid such values, it was specially provided in the contract, that notwithstanding the rule obtaining in such proceedings allowing special benefits to be considered, the plaintiffs should be "allowed and paid the value" both of the land and of the bridge abutments thereon; and to the end that their values should not in any event be reduced, it was further provided in the contract that defendant should not be allowed anything for the bonus of $750 and it should not be brought to the attention of any commissioners that might be appointed, or jury that might be selected to assess the damages.

Defendant failed and refused to have these values ascertained as provided in the contract, so that there was no other alternative by which plaintiff could have them ascertained except the institution of this suit upon the contract.

While it is true that the petition alleges that defendant fails and refuses either to institute the condemnation proceedings so agreed to be brought, or to pay to the plaintiff the fair and reasonable value of the land so taken by the defendant, the damage done to the remainder of the tract, and the value of the bridge abutments, and that the remainder of the land not taken for railroad purposes was damaged in the sum of five thousand dollars, plaintiff had a perfect right at any time before the case was finally submitted to the jury to abandon any and all claims for damages to the remainder of the tract not taken for railroad purposes, and this was the effect of his failure to introduce any evidence upon that feature of the case.

We are at a loss, however, to see how defendant was, or could have been in any event, prejudiced by the failure of plaintiff to introduce evidence as to damages to the remainder of the tract not taken for railroad purposes, for it matters not how much greater the

benefits may have been than the damages, defendant could not have had the excess set off against the value of the land actually taken, for that would be paying for the land taken with benefits to the remainder not taken, while the land taken could only be paid for in money. [Sec. 21, art. 2, State Constitution.] Moreover, defendant could only have the benefits to the land not taken *deducted* from the amount of damages to that portion by reason of the construction of the road through the tract (authorities supra), and, as it was not shown by plaintiff that the land was damaged, there was nothing from which to deduct any benefits; hence, the result was practically the same, in so far as defendant is concerned, as if the question as to damages and benefits had been submitted to and passed upon by the jury, and they had found that the benefits were in excess of the damages to the land.

Nor do we think the court erred in fixing the time at which the value of the land was to be determined as of the defendant's entry thereon. The contract sued on was entered into on December 30, 1891. Defendant had theretofore taken possession of the strip of land and bridge abutments, and had partially constructed its roadbed, and a temporary injunction was then pending restraining defendant from proceeding with the work. By the terms of the contract the restraining order was removed, and defendant's possession, which was theretofore unlawful, legalized. So that the rule to the effect that the time for fixing the value of the land taken is the date of its appropriation, as in condemnation cases, is not applicable to a case where possession is taken under contract. In Railroad v. Randolph Townsite Co., 103 Mo. 451, it is said:

"It is very clear from the terms of the Constitution, from reason and authority, that no appropriation of the land or permanent right to its use could be effected except either by condemnation or contract. . . . There is nothing in the evidence tending, in the remotest degree, to prove that plaintiff entered upon the land in the fall of 1886, under any agreement

with the owners, that the right to the easement should vest at that date, or that the payment of compensation should be postponed to a subsequent day. There was no agreement of any kind shown. Then plaintiff acquired no right to the land in 1886 under any contract. The evidence did not show that the owners of the land ever gave permission to enter thereon. . . . The question does not arise, in this case, whether plaintiff could deny a taking at any time, between the entry and assessment, and is not considered or determined.''

Ragan v. Railroad, 111 Mo. 456, was an action for damages for the appropriation by the defendant of a strip of plaintiff's land for the right of way for a railroad, and it was held that the value of the land should be assessed as of the time when the defendant entered upon the land, and graded the railroad and laid its tracks. The defendant took possession and laid its track through the premises in 1887. The court instructed the jury as follows: ''You are instructed that the damages are to be fixed as of the date that the defendant, the Kansas City & Southeastern Railroad Company, took possession of the lots in controversy, in 1887, and not of any other date.'' The court, in speaking of this instruction, through GANTT, J., said: ''This instruction properly required the damages to be assessed as of the time of the taking and appropriating the land. In this case, that time was when defendant entered and graded the roadbed and laid its tracks, and it should be held for the damages it then caused.''

It must follow that the trial court did not err in confining the testimony as to the value of the land taken to the time indicated, nor in likewise instructing the jury.

For these considerations the judgment should be affirmed and it is so ordered.

All of this Division concur.

ON REHEARING.

BURGESS, J.—Defendant presents motion for rehearing in this case, assigning several grounds therefor. Among others, it is said counsel for appellant submitted the proposition that, either in a condemnation case or in a suit by the owner for the value of his land taken for railroad purposes, the value of the land can be paid for either in money or in benefits to the remainder of the land not taken, but that this court overlooked the authorities presented on that proposition, and holds that under the Constitution the land can only be paid for in money. It requires but an impartial glance at the opinion to show that we did not overlook the authorities presented.

Nor does the opinion announce that, as a rule, the value of lands taken or condemned for railroad purposes may not in such a proceeding, or in an action by the owner of the land for the value of the land taken, and damages to the remainder of the tract, be ascertained and the benefits to the land including that taken, can not be deducted from the damages allowed, but especially recognized it, and differentiates the case at bar from that line of cases, in that, in this case the land was appropriated by defendant under an agreement in writing with plaintiff by the terms of which he was to be "allowed and paid the value of the bridge abutments on his said land as well as for the land taken," which means paid in money and nothing else, and if it was otherwise intended by the parties to the contract, that is, that the benefits to the tract by reason of the construction of the road was to be deducted from the value of the land actually taken, and from the damages to the remainder of the tract, whether such damages were claimed or not, it is defendant's misfortune that it is not so specified in the contract, in the absence of which it must be presumed that no such agreement was made. When defendant appropriated the land to railroad purposes by and with the written consent of plaintiff, the law implied a promise by it that it would pay

plaintiff therefor its reasonable value, and, while plaintiff in this action not only sued for the value of the land taken, but also for damages by reason thereof to the entire tract, he abandoned the claim for damages at the trial, as he had the right to do, and offered no evidence on that feature of the case, and we are at a loss to know how benefits could be deducted from damages not claimed. Suppose, instead of leaving the question as to the value of the land taken to be thereafter agreed upon between the parties, they had agreed upon the price to be paid for it, and in default of its payment plaintiff had sued defendant for the purchase price, would it be contended that defendant in such suit could have had deducted any benefits that the entire tract may have sustained by reason of the construction of the road from the amount of the purchase money? We apprehend not. There is no difference in principle between the supposed case, and the one at bar. The one is an implied promise to pay the reasonable value of the land taken under contract, while the other is an express promise to do so; and in either case to allow benefits to the land not taken to be deducted from the value of the land taken, when no damages are claimed by reason of the construction of the road, would in effect be paying for the land taken in benefits, while under the contract it is to be paid for in money. To permit the land taken to be paid for in benefits, would be in the face of the contract, and in violation of section 21, article 2, of the Constitution.

Of all the decisions of this court cited by defendant as sustaining its contention, not one of them is bottomed upon a *contract for the taking and appropriation of land for railroad or other public purposes,* as is this case, and therefore they do not cover the question under consideration.

It is said by counsel for defendant that the contract is no stronger than the Constitution, which can not be held to require the payment in money for land taken for public use. Our answer to this contention is,

Vol 172 mo—36.

that the law of the land guarantees every citizen the right to contract, and that is just what plaintiff and defendant did in this case, and nothing more.

It is true that it was incorrectly stated in the opinion that the defendant was to institute condemnation proceedings for the purpose of condemning the land *not later* than April 15, 1892, instead of not before that time, and in that respect the opinion will be modified.

The contract does not, however, provide, as asserted by defendant, that the condemnation proceedings should not be begun until after the 15th day of April, 1892, but does provide that such condemnation proceedings should not be begun until after that date *without further effort to agree* with the plaintiff as to the value of his land and bridge abutments. It was contemplated by the contract that the condemnation proceedings should be begun immediately after April 15, 1892, in any event; and further, that they should be begun forthwith after the making of the contract provided the plaintiff should have returned to Jackson county, Missouri, so as to be able to give the matter his personal attention. The defendant could have instituted these condemnation proceedings as provided by the contract at any time after April 15, 1892, and without even making any further effort to agree with the plaintiff as to compensation, but it steadily declined and refused to do so until the plaintiff was finally compelled, after waiting more than six years, to file this suit on September 13, 1898.

The motion for rehearing is overruled. All of this Division concur.