451 P.2d 1011

**The STATE of Idaho ex rel. R. Doyle SYMMS, Ernest F. Gaffney and C. Ed Flandro, Idaho Board of Highway Directors, Plaintiff-Appellant,**

v.

**COLE FIRE PROTECTION DISTRICT, Defendant-Respondent.**

**No. 10359.**

Supreme Court of Idaho.

March 20, 1969.

Faber F. Tway, Anton Hohler, Boise, for plaintiff-appellant.

Anderson, Kaufman, Anderson & Ringert, Boise, for defendant-respondent.

SHEPARD, Justice.

This case concerns the condemnation by the State of Idaho, pursuant to highway construction programs, of certain property in the southwest quadrant of the intersection of Fairview Avenue and Orchard Avenue in Boise. Some of the land was taken in fee, and easements, both temporary and permanent, were also condemned.

The parties were unable to agree upon the value of the property so taken, and the action was tried before a jury on March 27, 1968, and the jury awarded respondent $68,000 for value of land and easements taken and damages to the remainder.

From this judgment the State appeals. The assignments of error concern the overruling of objections made by appellant.

Appellant first asserts that it was error for the trial court to allow testimony to the effect that the construction of the highway in question had resulted in the presence on the market of sizable quantities of land in the immediate area of respondent's property, which in turn resulted in lower land values in the area. They assert that this reduction in market value is a general damage suffered by the community as a whole, and that it cannot be considered "reasonably incident to the construction or operation of the work to be considered in awarding compensation." 27 Am.Jur.2d 126, Eminent Domain, § 310 (1966). Under either of those theories, they contend the damages would not be compensable to the extent that the decrease in land values was due to this cause.

However, it is unnecessary for this Court to rule on the valuation principle involved, for it does not appear that either of respondent's experts, Isensee or McDowell, relied on this factor in making his valuation of the property. Witness Isensee specifically stated that the factors which determined his valuation of respondent's

remaining land were the following: (1) loss of depth; (2) loss of corner position and ease of access; (3) reduction of overall size; and (4) loss of suitability for unlimited commercial use. Witness McDowell did not specifically summarize the factors which influenced his valuation of the respondent's land following the condemnation, but his testimony as a whole indicates that he relied on the same factors as Mr. Isensee, and in fact the dollar amounts found by the witnesses to be the value of respondent's land before and after the take were very nearly the same.

There is ample testimony which indicates the factors on which these witnesses based their valuations, and no particular evidence which indicates that the valuations of land following the condemnation were reduced to any great degree by any surplus lands on the market. Since appellant admits that the other factors considered in valuing the land were proper, there is no prejudice shown and no relief available. See State v. Snoderly, 61 Idaho 314, 101 P.2d 9 (1940).

The appellant here further had benefit of the court's instruction No. 10 to the jury. Said instruction stated:

"INSTRUCTION NO. 10

The property being taken may not be valued with reference to enhancement or depreciation in value, if any, to said property arising solely and directly from the public improvement proposed by the (appellant). Increase or decrease in value, if any, caused by the construction or knowledge of the construction of the public improvement is excluded in the determination of fair market value."

The appellant has not in any manner shown how the inference allegedy established from the admission of the evidence was prejudicial to his case or not cured by the instructions of the court to the jury.

Appellant next urges that it is improper cross-examination procedure to attempt to test the credibility of opposing ex-

pert witnesses in condemnation cases by referring to other appraisals made by them. We disagree. Absent an opportunity to show that an expert witness is not really qualified, one of the few ways an opposing party has to question his credibility, other than by mere contradictory testimony of other witnesses, is to show the witness has made other apparently inconsistent appraisals of similar property in the approximate area and within a proximate period of time. The witness at that time or on redirect examination has every opportunity to temper such other appraisal or appraisals and convince the jury they are not inconsistent. But the opposing party has every right to raise the spectre of inconsistencies and to attempt to impeach the witness thereby. City of Tucson v. LaForge, 8 Ariz.App. 413, 446 P.2d.692 (1968); Contra Costa County v. East Bay Municipal District, 175 Cal.App.2d 834, 1 Cal.Rptr. 60 (1959); Commonwealth, Dept. of Highways v. Eubank, 369 S.W.2d 15 (Ky., 1963); Commonwealth, Dept. of Highways v. Staton, 396 S.W.2d 766 (Ky., 1965). See also 3 Wigmore, Evidence, § 1041, p. 733 (3d Ed., 1940); 27 Am.Jur.2d 321, Eminent Domain, § 425 (1966).

A general summary of the applicable law is found at 5 Nichols on Eminent Domain 271 et seq., § 18.45(2) (1962, 1968 Supp.).

"Cross-examination.

The scope of the cross-examination of experts and other witnesses who have testified to value in land damage cases is very broad, since cross-examination is often the only protection of the opposing party against the unwarranted estimates that a certain class of mercenary experts is wont to indulge in. A witness may be asked on cross-examination any facts which would be admissible on direct examination. Thus, he may be asked what was paid for the property, if it was recently bought or what it sold or rented for. He may be asked the price paid for similar lands at or about the time of the taking or the increase or diminution of rental values. * * *

812

Evidence which would not be admissible if offered on direct examination cannot be introduced upon the cross-examination of a hostile witness as independent proof of the facts stated. A witness who has given an opinion of value may, however, in the discretion of the court, be asked questions on cross-examination, for the purpose of testing his opinion, which would be improper upon direct examination. * * * His answers are not, however, evidence of the facts stated, and at best merely nullify his testimony; and when a witness has given no opinion of value on direct examination he cannot be cross-examined in this way. When sales of comparable properties in the vicinity of the property involved have been testified to on direct examination or are the basis of a witness' opinion as to value, cross-examination as to such sales is proper for the purpose of testing his knowledge of market values or lessening the weight of his opinion. However, if the witness has testified that he did not consider certain sales in reaching his conclusion as to value he may not be cross-examined with respect to such sales. Cross-examination with respect to sales which are not comparable is not permitted.

*He may be questioned as to his appraisals of other property in the area which he has made, but only if a foundation has been laid for comparison of the different tracts appraised.*

*Cross-examination of the expert as to other appraisals made by him of neighboring land made at a time which is not too remote is permissible.*

The opinion of a witness may be impeached by showing that his acts are inconsistent with his words, as for example by showing that he has offered the same or similar property for sale at a price far different from what he now says it is worth, or he may be asked whether he has not made inconsistent statements upon the same point upon other occasions. * * *

Cross-examination of an opinion witness may embrace an investigation of the qualifications of the witness, the extent of his knowledge, the reasons for his opinion, and the factors upon which his opinion is based.

*    *    *    *    *    *

*The extent to which cross-examination will be permitted is largely in the discretion of the trial court, and the rulings of the court upon this point are not subject to exception unless wholly arbitrary and unreasonable. The extent of the examination need not be extended to permit interrogation about collateral, immaterial or irrelevant matters."* (Emphasis supplied, Footnotes omitted)

Respondent, before questioning appellant's expert witnesses regarding prior appraisals, laid a foundation showing that the properties in question were similar in nature, and that the appraisals were proximate in time. Appellant, on redirect examination, had ample opportunity to distinguish the appraisals in question from that in the case at bar. There was no error in that procedure.

■ Appellant assigns as error the overruling of objection to a question put on cross-examination to appellant's expert witness Smith concerning the length of time the remainder of the subject property had been on the market at a particular price. As stated in the excerpt from Nichols, supra, that type of question, designed to test the knowledge and credibility of an opponent's expert witness, is within the proper scope of cross-examination.

Judgment affirmed. Costs to respondents.

McFADDEN, C. J., and McQUADE, DONALDSON and SPEAR, JJ., concur.