736 P.2d 1366

Albert WELLS,
Plaintiff-Respondent-Cross
Appellant,

v.

Elisabeth D. GOOTRAD,
Defendant-Appellant-Cross
Respondent.

No. 16486.

Court of Appeals of Idaho.

April 21, 1987.

Rehearing Denied June 9, 1987.

Petition for Review Denied Sept. 17, 1987.

Don G. Passow, St. Maries, for defendant-appellant-cross respondent.

Scott W. Reed, Coeur d'Alene, for plaintiff-respondent-cross appellant.

WALTERS, Chief Judge.

This case involves the enforcement of Albert Wells' option to repurchase ten acres of land he had previously sold to the defendant Gootrad's husband. The district court held that Wells could enforce the option and ordered Gootrad to convey the land to Wells. Gootrad appeals from the judgment, asserting twenty-one errors by the district court. We have examined those assertions and consolidate them into the following issues: (1) whether the district court erred in holding the option agreement enforceable; (2) whether the district court erred in appointing an appraiser to determine the value of the land; (3) whether the district court erred in assessing Gootrad for one-half of the fee of the court-appointed appraiser; and (4) whether the district court erred in awarding attorney fees and costs to Wells. Wells cross-appeals, contending that the district court erred in finding that the property should be valued as of the time Wells gave notice of his intention to exercise the option, rather than when he was awarded a judgment for possession. Both parties seek attorney fees on appeal. We affirm.

The record reveals the following facts which are pertinent to the issues before us. In 1973, Wells purchased five hundred acres of land near Harrison, Idaho, to develop a guest ranch. Wells hired the defendant's husband, Stanley Gootrad, to operate and manage the property, known as Timber Ridge Ranch. In 1976, Wells sold Stanley Gootrad ten acres of land within the ranch on which to build a home. There was no written contract of sale involved. The conveyance deed contained a clause stating that, if Gootrad ceased to be involved in the management of the ranch, Wells had the option to repurchase the ten acres. In 1977 or 1978, Wells decided to sell the ranch. In 1978, Wells also learned that Stanley Gootrad had contracted leukemia. However, Gootrad continued to manage the ranch until December of 1979. In April 1980, the Gootrads rejected an offer by Wells to repurchase the ten acres. In October 1980, Wells gave formal notice that he wished to exercise his option to repurchase the ten acres, but received no response from the Gootrads. Stanley Gootrad died in 1981 and Elisabeth, the defendant, inherited the ten acres. In August 1982, Wells filed this action to enforce the repurchase option. In August 1984, the district court granted summary judgment in favor of Wells, holding that the option to repurchase was enforceable.

The deed which conveyed the property to Gootrad contained extensive provisions for determining the value of the property in the event Wells decided to exercise his option. Elisabeth Gootrad, who contested the enforceability of the option clause, also challenged the procedure for valuing the property and she refused to sell to Wells. Eventually, the district court appointed an appraiser to determine the value of the property. The court assessed Gootrad for one-half the cost of the appraisal. The court then ordered Gootrad to convey the ten acres to Wells in return for the appraised value. Gootrad appeals from the judgment ordering her to convey the land to Wells for the appraised value and Wells disputes the court's valuation of the property. We address each of the parties' issues in turn.

I

The Option to Repurchase

■ The district court granted Wells summary judgment on the question of the

enforceability of the repurchase option. Summary judgment is proper only when there are no genuine issues as to any material fact, and the moving party is entitled to judgment as a matter of law. *State Tax Commission v. Western Electronics, Inc.,* 99 Idaho 226, 580 P.2d 72 (1978). Gootrad asserts, as she did in the district court, that there are genuine issues of material fact to be resolved by a jury. Gootrad's contentions center around the intent of the parties when they transferred the land from Wells to her husband and whether the agreement is ambiguous. The policy of the law is to determine and implement the intent of a grantor of a deed. *Mollendorf v. Derry,* 95 Idaho 1, 501 P.2d 199 (1972); *Hogan v. Blakney,* 73 Idaho 274, 251 P.2d 209 (1952). Gootrad's numerous other challenges to the deed range from allegations that there was a failure of consideration to questions of why and when Wells decided to sell the ranch. These contentions, however, are merely tangential to the real question of what was intended by the parties. We do not address each of Gootrad's tangential assertions separately because none of them affects our conclusion that the district court was correct in upholding the option.

The "option" provision in the deed conveying the land to Gootrad states:

> If at any time ... Stanley Gootrad ceases to be actively involved in the management and operation of [Timber Ridge Ranch] as a guest ranch, [Wells] shall thereafter have the right and option ... to purchase [the ten acres].

Wells indicated that he wanted the repurchase option because, if he decided to sell the ranch, Gootrad's ten acres located in the middle of the ranch could hinder the sale. Also, as long as Gootrad was managing the ranch, it was beneficial to Wells to have Gootrad living on the ranch property. The option language was not a separate agreement, but was part of the overall agreement transferring the property to Gootrad. Thus, contrary to Gootrad's assertion, we conclude that no separate consideration was necessary in exchange for Wells' reservation of the right.

Gootrad's main contention is that the language in the deed, concerning the repurchase of the ten acres, is ambiguous. Gootrad contends that the wording in the deed—"ceases to be actively involved in the management and operation" of the ranch—meant that Wells could repurchase the ten acres only if Stanley Gootrad *chose* to quit working for the ranch. However, we examine the entire instrument in determining whether an ambiguity exists. If a phrase has only one meaning that is consistent with the remainder of the instrument, no ambiguity exists. Although Gootrad's interpretation may be feasible, we find such an interpretation to be illogical and inconsistent with the document as a whole. The phrase clearly refers to Stanley Gootrad's "stopping" or "quitting" work at the ranch. However, the language simply does not address whether the cessation might result from Stanley's own actions or the actions of Wells. Nor is an answer to that question necessary to interpret the intent of the option language. The central theme is that if Stanley stopped working at the ranch, Wells could repurchase the land. Gootrad admitted that her husband did not operate or manage the ranch after December 10, 1979, thus activating Wells' option.

Reading the instrument as a whole also supports this conclusion. The deed contained numerous restrictions. Virtually all of those restrictions applied exclusively to Gootrad. For instance, other than the repurchase option, there were restrictions on the kinds of dwellings that Gootrad could build on the ten acres, on the improvements that could be made, on subdivision of the property, on mining activities, and on the transferability of the property—if Gootrad wished to sell the property, Wells reserved a right of first refusal. The intent of the language is clear—if Stanley Gootrad was no longer involved in the ranch operations, Wells had a right to repurchase the ten acres at a price to be determined according to provisions in the deed. This intent remains the same whether the right is termed a "reservation" or "option." Nothing in the deed would lead us to conclude that Stanley Gootrad was given the power

that his wife's interpretation of the agreement would allow. In short, the wording in the deed is straightforward, unambiguous, and leaves no room for doubt as to the intention of the parties when Wells sold the ten acres to Gootrad. Therefore, we agree with the district court that there were no genuine issues of material fact to be tried, and that summary judgment was proper on the interpretation and enforceability of the repurchase option.

## II

### Court Appointment of Appraiser

■ The deed contained explicit language for determining the repurchase price in the event Wells exercised his option to repurchase. If Wells and Gootrad could not agree on a price, they would mutually select an appraiser. If they could not agree on a single appraiser, Wells and Gootrad would each choose an appraiser, and the price would be that agreed upon by the two appraisers. If the two appraisers could not decide on a price, those two would select a third appraiser to fix the value.

Wells and Gootrad could not agree on a price. Nor did the selection of an appraiser proceed smoothly. The record reflects that Gootrad continually resisted efforts to select an appraiser or to have an appraised value set for the property according to the terms of the deed. Although each party eventually ended up with its own appraiser, the two appraisers could not agree on a value. Wells' appraiser then submitted the names of three alternative appraisers to Gootrad's appraiser. Gootrad's appraiser rejected those three and selected a fourth who was, in turn, unacceptable to Wells' appraiser. Wells' appraiser then submitted a list of ten more appraisers, plus the three original ones. All of these were rejected by the Gootrads' appraiser. Gootrad took the position that the value of the property could only be determined by a trial. Faced with Gootrad's refusal to accept an appraiser, the district court appointed an appraiser to determine the property's value. Gootrad continues to assert on appeal that the court did not have authority to do so. We dis-

agree. The district court found that the repurchase agreement was enforceable. Wells had brought the suit for specific performance of the option. Part of the enforcement of the option was the selection of an appraiser. Gootrad grudgingly participated in the early stages of obtaining an appraisal value. However, she refused to meaningfully participate in selecting a final, mutually agreed upon appraiser. Therefore, the court selected the final appraiser. We agree that the court's action in appointing an appraiser, which was simply part of the enforcement of the overall agreement, was within its inherent powers as a court of equity. We note that Gootrad's appraiser, in a letter to the Wells' appraiser, indicated that the court should pick the third and final appraiser. That is exactly what the court did. We find no error in the court's appointment of the appraiser.

There is some question as to whether the court operated under the provisions of Idaho's Uniform Arbitration Act (I.C. §§ 7–901 to –922) in selecting the appraiser. In the court's order appointing the appraiser, the court stated that it was acting under authority of the Arbitration Act and under its general equity powers. At a later hearing, the court stated that it was not ordering proceedings according to the Arbitration Act, but rather had "drawn by analogy" from the Act. We do not find it necessary to go into detailed analysis of the Arbitration Act. The record convinces us that the court's action was proper in terms of an exercise of the court's general equity powers and the requirements as dictated by the repurchase option.

## III

### Assessment of Appraiser's Fees

■ Gootrad has challenged the authority of the district court to assess her for one-half the fee of the court-appointed appraiser. As best we can determine, that argument is based generally on Gootrad's contention that the court was without authority to appoint the appraiser. The option clause stated that "the cost of the fee

of any third appraiser or one appraiser, if only one appraiser shall be employed, shall be divided equally between [Wells and Gootrad]." Thus Gootrad, according to the deed, was obligated for one-half the fee of the final appraiser. The language establishing that obligation could hardly be more clear. Thus, the assessment of the appraiser's fee was proper.

## IV

### Attorney Fees and Costs

■ The last issue raised by Gootrad concerns the district court's award of attorney fees and costs to Wells. The deed contained provisions for enforcement of its covenants and restrictions. Under those provisions, the prevailing party was entitled to attorney fees and costs. The district court awarded attorney fees and costs based on those provisions. Wells clearly prevailed, and thus, the award was proper.

## V

### Valuation of the Property

■ The final issue before us, raised by Wells, is whether the property should have been valued as of the day Wells gave notice of his intention to exercise the option to repurchase, or alternatively, at the time Wells obtained a judgment for possession. On October 29, 1980, when Wells gave notice of his intention to exercise the option, the property was worth $145,000. In 1986, when Wells obtained a judgment, the property was valued at $120,000. The district court decided that the parties' intent was that the property should be valued as of the time of the exercise of the option. The court therefore ordered Wells to pay $145,000, and for Gootrad to convey the ten acres to Wells.

Wells has not argued for the lower value upon any authority based on equitable principles such as estoppel. Rather, his argument is based upon an analogy to the computation of damages at the time of "taking" in eminent domain cases. We find the analogy to be inapposite. A purchaser of land, awarded specific performance according to his contract, is entitled to an allowance for his loss resulting from the seller's delay in conveying the property. 71 Am. Jur.2d *Specific Performance* § 217 (1973). A court, ordering specific performance in such a circumstance, attempts to put the purchaser in the same position as if the agreement had been performed according to its terms. One of the terms is the date fixed for performance. Annotation, *Specific Performance: Compensation or Damages Awarded Purchaser for Delay in Conveyance of Land,* 7 A.L.R.2d 1204 (1949).

Here, because of a general decline in prices, the property decreased in value by $25,000 between the time Wells served notice of his intention to exercise his option and when he obtained a judgment for possession. In the meantime, during 1981, Wells sold part of the ranch to a third party. As part of that sale, Wells promised the purchaser that when title to the ten acres was obtained from the Gootrads, Wells would convey those ten acres to the third party at a fixed price. As noted, Wells exercised his option on October 29, 1980. He contracted to sell the property to the third party on January 13, 1981, approximately two and one-half months after he gave notice of his intention to exercise the option. Thus, if Wells had obtained the property from the Gootrads at the time he gave notice he would have paid them $145,000, and then sold the same property to the third party at the fixed price. In order to put Wells in the same position as if the option had been honored when notice was given, the property should therefore be valued at $145,000. In light of the lack of any assertion to the contrary by Wells, we deem the two and one-half month period between the date of the exercise of the option and the date of transfer to the third party to be immaterial. *See State ex rel. Symms v. Collier,* 93 Idaho 19, 454 P.2d 56 (1969) (court disregards three-month period between the time when value determination was made and when it should have been made). Therefore, the district court did not err in determining the value of the property to be $145,000.

The judgment of the district court is affirmed. As noted, the deed conveying the land to Gootrad provided for attorney fees and costs for the prevailing party in a suit brought to enforce the terms of the deed. Accordingly, costs and attorney fees on appeal are awarded to Wells.

BURNETT and SWANSTROM, JJ., concur.